UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————— X

KAITLIN KRAUSE,

                         Plaintiff,

          - against -

MERRILL LYNCH, PIERCE, FENNER & SMITH,
INCORPORATED, MERRILL LYNCH & CO., INC., and
BANK OF AMERICA CORPORATION,

                     Defendants.

————————————————————— X

10 CV 2603 (RMB)(JLC)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# Table of Contents

**Page**

Statement of Facts ..........................................................................................................2

Background ...................................................................................................................2

Plaintiff's Job Duties ....................................................................................................3

Plaintiff's Supervisors..................................................................................................4

Anti-Discrimination and Anti-Harassment Policies and Complaint Procedure .........5

October 21, 2008 Incident............................................................................................5

Merrill's Actions Subsequent to October 21, 2008......................................................7

Argument .....................................................................................................................8

I.       SUMMARY JUDGMENT IS AN APPROPRIATE PROCEDURE FOR RESOLVING PLAINTIFF'S CLAIMS .......................................................8

iI.      PLAINTIFF'S CLAIMS FOR A HOSTILE WORK ENVIRONMENT SHOULD BE DISMISSED..............................................................................9

      A.   Liability Cannot Be Imputed to Defendants for the Alleged Incident on October 21, 2008.........................................................................................10

      B.   Plaintiff Cannot Demonstrate the Existence of a Hostile Work Environment in Merrill's Workplace....................................................................................13

      C.   Plaintiff's Failure to Complain of Alleged Sexual Harassment During Her Tenure at the Firm Compels Dismissal of Her Claim.....................................19

III.    PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED ...................................................20

IV.    PLAINTIFF'S WAGE AND HOUR CLAIMS SHOULD BE DISMISSED .............22

Conclusion....................................................................................................................25

KL3 2803792.1

### Table of Authorities

**Page**

### CASES

*Brown v. Henderson,*
    257 F.3d 246 (2d Cir. 2001)...........................................................................13, 15, 16

*Burrell v. City Univ. of N.Y.,*
    995 F. Supp. 398 (S.D.N.Y. 1998).........................................................................21

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..................................................................................................8

*Chan v. NYU Dowtown Hosp.,*
    No. 03 Civ. 3003, 2005 U.S. Dist. LEXIS 40243 (S.D.N.Y. Feb. 14, 2004).......................17

*Chenette v. Kenneth Cole Prods., Inc.,*
    345 Fed. Appx. 615 (2d Cir. 2009)..............................................................9, 15, 20

*Conboy v. AT&T Corp.,*
    241 F.3d 242 (2d Cir. 2001)......................................................................................20

*Davis v. New York City Transit Auth.,*
    No. 05 Civ. 6995, 2008 U.S. Dist. LEXIS 96991 (S.D.N.Y. Nov. 14, 2008).............9, 12, 19, 20

*DeSimone v. JP Morgan/Chase Bank,*
    No. 02 Civ. 7039, 2004 U.S. Dist. LEXIS 25621 (S.D.N.Y. Dec. 21, 2004).........................9

*Devlin v. Teachers' Ins. & Annuity Assoc. of Am.,*
    No. 02 Civ. 3228, 2003 U.S. Dist. LEXIS 5226 (S.D.N.Y. April 1, 2003)...........10, 11, 12

*Dollman v. Mast Indus., Inc.,*
    No. 08 Civ. 10184, 2010 U.S. Dist. LEXIS 84137(S.D.N.Y. Aug. 17, 2010)......................22

*Feliciano v. Alpha Sector, Inc.,*
    No. 00 Civ. 9309, 2002 U.S. Dist. LEXIS 12631 (S.D.N.Y. July 11, 2002)................10, 15

*Fermin v. Marriott Corp.,*
    No. 99 CV 3011, 2002 U.S. Dist. LEXIS 19925 (E.D.N.Y. Aug. 9, 2002).........................18

*Gabel v. Richard Spears Kibbe & Orbe, L.L.P.,*
    615 F. Supp. 2d 241 (S.D.N.Y. 2009).................................................................9, 22

*Galarza v. American Home Ass. Co.,*
    99 F. Supp. 2d 251 (E.D.N.Y. 2000)......................................................................20

KL3 2803792.1

**Table of Authorities**
**(cont'd)**

**Page**

*Garcia v. New York City Admin. of Children's Servs.*,
  No. 03 Civ. 05271, 2007 U.S. Dist. LEXIS 71273 (S.D.N.Y. Sept. 26, 2007),
  *aff'd*, 354 Fed. Appx. 476 (2d Cir. 2009) ................................................................. 13

*Gurry v. Merck & Co.*,
  No. 01 Civ. 5659, 2003 U.S. Dist. LEXIS 6161 (S.D.N.Y. Apr. 14, 2003) .................... 9, 21

*Hendricks v. Bayville Ave. Rest. Corp.*,
  260 A.D.2d 545 (2d Dep't 1999) ........................................................................... 11

*Horsford v. Salvation Army*,
  No. 99 Civ. 5721, 2001 U.S. Dist. LEXIS 17592 (S.D.N.Y. Oct. 26, 2001) .................... 21

*Kamrowski v. Morrison Mgmt. Specialist*,
  No. 05 CV. 9234, 2010 U.S. Dist. LEXIS 103290 (S.D.N.Y. Sept. 29, 2010) .................. 18

*Lamar v. NYNEX Serv. Co.*,
  891 F. Supp. 184 (S.D.N.Y. 1995) ........................................................................ 18, 19

*Lane v. Collins & Aikman Floorcoverings, Inc.*,
  No. 00 Civ. 3241, 2001 U.S. Dist. LEXIS 17757 (S.D.N.Y. Oct. 30, 2001) .................... 18

*McNally v. Posterloid Corp.*,
  148 Fed. Appx. 23 (2d Cir. 2005) ......................................................................... 12

*Morales v. Zondo, Inc.*,
  No. 00 Civ. 3494, 2001 U.S. Dist. LEXIS 508 (S.D.N.Y. Jan. 25, 2001) ......................... 2

*Mota v. Imperial Parking Sys.*,
  No. 08 Civ. 9526, 2010 U.S. Dist. LEXIS 87593 (S.D.N.Y. Aug. 24, 2010) .................... 22

*Nieves v. Dist. Council 37 AFSCME*,
  No. 04 Civ. 8181, 2009 U.S. Dist. LEXIS 1112653 (S.D.N.Y. Nov. 24, 2009) ................. 17

*O'Neill-Marino v. Omni Hotels Mgmt. Corp.*,
  No. 99 Civ. 3793, 2001 U.S. Dist. LEXIS 2138 (S.D.N.Y. Mar. 2, 2001) ......................... 2

*Quinn v. Green Tree Credit Corp.*,
  159 F.3d 759 (2d Cir. 1998) ............................................................................... 9, 12

*Sacco v. Legg Mason Inv. Counsel & Trust Co.*,
  660 F. Supp. 2d 302 (D. Conn. 2009) ............................................................... 13, 14, 16

KL3 2803792.1

**Table of Authorities**
**(cont'd)**

                                                                                                    **Page**

*Schwind v. EW & Assoc., Inc.,*
    357 F. Supp. 2d 691 (S.D.N.Y. 2005)......................................................................2, 3, 22

*Seltzer v. Dresdner Kleinwort Wasserstein, Inc.,*
    56 F. Supp. 2d 288 (S.D.N.Y. 2005)......................................................................1, 2, 3, 9

*Sowemimo v. D.A.O.R. Sec., Inc.,*
    43 F. Supp. 2d 477 (S.D.N.Y. 1999).............................................................................21

*Stevens v. New York,*
    691 F. Supp. 2d 392 (S.D.N.Y. 2009).....................................................................21, 22

*Sutton v. New York City Transit Auth.,*
    No. 02-CV-1441, 2009 U.S. Dist. LEXIS 118309 (E.D.N.Y. Sept. 30, 2009)...................15

*Thomas v. Westchester Cnty. Health Care Corp.,*
    232 F. Supp. 2d 273 (S.D.N.Y. 2002)....................................................................11, 15

*Tomka v. Seiler Corp.,*
    66 F.3d 1295 (2d Cir. 1995).......................................................................................13

*Weinstock v. Columbia Univ.,*
    224 F.3d 33 (2d Cir. 2000)...........................................................................................8

**STATUTES**

29 C.F.R. § 541.200(a) (2010).............................................................................................23

29 C.F.R. § 541.201(a), (c)..................................................................................................23

29 C.F.R. § 541.202(b)........................................................................................................23

29 C.F.R. § 541.202(c).........................................................................................................23

29 C.F.R. § 541.203(b)........................................................................................................23

29 C.F.R. § 541.205(c).........................................................................................................25

29 U.S.C. § 213(a)(1)....................................................................................................22, 25

Fed. R. Civ. P. 56(c)..............................................................................................................8

N.Y. Penal Law § 135.60(1)...................................................................................................8

KL3 2803792.1

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff's hostile work environment claims based on her gender under Title VII and the New York State Human Rights Law ("NYSHRL"), her intentional and negligent infliction of emotional distress claims and her wage and hour claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law should be dismissed on summary judgment.

First, Plaintiff's attempt to hold Defendants ("Merrill," the "Firm" or "Defendants") responsible for a purported off-duty, after-hours sexual assault by her co-worker must be rejected as a matter of law. The alleged incident occurred at Plaintiff's apartment five hours after she left work, during which time she engaged in purely social activity with her co-worker and then invited him to her apartment to take illegal drugs. This alleged non-work related, off-premises incident is not part of Merrill's work environment and the Firm thus cannot be held liable. Moreover, liability may not be imputed to Defendants for this incident as it occurred with Plaintiff's *co-worker*, not her supervisor, and no one had ever before complained about the co-worker, including Plaintiff, despite the Firm's well-publicized anti-discrimination and anti-harassment policies and complaint procedure, which Plaintiff received and acknowledged.

Second, Plaintiff's remaining hostile work environment claims pertaining to Merrill's workplace cannot survive in the face of her admission, under oath, that she does not believe that anyone at Merrill discriminated against her based on her gender. Moreover, Plaintiff's claims are exclusively predicated on alleged sporadic conduct by her *co-workers*, the bulk of which is gender-neutral. During her two years at the Firm, Plaintiff never once complained of such behavior to her supervisors or Human Resources as required by Merrill's policies. Therefore, not only is Plaintiff unable to show that such conduct is sufficiently severe and pervasive to establish a hostile work environment, but liability also cannot be imputed to Merrill for such conduct because it maintained a reasonable avenue of complaint, of which Plaintiff failed to avail herself.

Third, Plaintiff's allegations concerning her co-workers' workplace conduct do not even begin to approach the rigorous standard required to establish a claim of intentional infliction of emotional distress as she cannot show that she was subjected to "extreme and outrageous conduct." In addition, Plaintiff is unable to demonstrate that Merrill intended to cause such conduct, or that it was reckless with respect to the causation of such conduct, as the Firm had no knowledge of such purported conduct based on Plaintiff's failure to complain.

Fourth, Plaintiff's wage and hour claims, alleging that she was misclassified as exempt and was entitled to overtime pay, completely lack merit. Plaintiff was properly classified as administratively exempt because her salary was more than double the requisite salary threshold and she performed work critical to the Firm's financial services business and to the business of its clients, which included the exercise of her discretion and independent judgment.

## Statement of Facts[1]

**Background**

Plaintiff began working at Merrill in August 2006 as a temporary employee. (Krause Dep. at 386, Affirmation of Kevin B. Leblang dated December 21, 2010 ("Leblang Aff.")). Commencing in October 2006, she was assigned to the Emerging Europe Middle East and Africa ("EEMEA") desk in Global Equity Markets. (*Id.* at 176). In January 2007, Merrill hired Plaintiff as a Senior Specialist on the EEMEA desk. (*Id.* at 176, 396, 521). Benjamin Samuels ("Samuels"), who ran the EEMEA desk in New York, decided to hire Plaintiff and directly supervised her during the first part of her time working on the desk. (*Id.* at 432; Samuels Dep. at 7, Leblang Aff). Plaintiff initially was paid a salary of $55,000. (Leblang Aff. Ex. B). Throughout the time that Plaintiff worked on the EEMEA desk, there were an equal or greater number of female employees versus male employees working on the desk. (Krause Dep. at 436-37; 439; 441; 445).

---

[1] Because we accept as true Plaintiff's evidence for purposes of this motion only, the material facts in this case are not in dispute.

**Plaintiff's Job Duties**

The EEMEA desk provides investment advice to clients who invest in the region covered by the desk. (Samuels Dep. at 6). Plaintiff's position as a Senior Specialist was critical to the desk's functionality. (*Id.* at 30; Krause Dep. at 582). Plaintiff's initial duties included organizing road shows and other client events, preparing presentation books for clients and processing the desk's expenses. (Krause Dep. at 163-64; 168; 309). Plaintiff's position required her to take the Series 7 examination in order to earn a securities license. (Leblang Aff. Ex. C).

Plaintiff quickly desired enhanced job duties and to transition into a more senior role and her responsibilities were increased accordingly. (Krause Dep. at 396; Samuels Dep. at 39, 42; Lamprecht Dep. at 37, Leblang Aff.). Indeed, Plaintiff performed job functions that entailed "more than what the other [people] with the same title [were] doing." (Krause Dep. at 393, 395).

As a result, Plaintiff's duties were expanded to include helping to directly support the desk's clients and generate revenue for the desk. (Samuels Dep. at 38). In essence, she began to "back up" her supervisor in covering clients. (Krause Dep. at 384-85). For instance, Plaintiff received client inquiries requesting research on certain topics and she independently selected responsive research pieces to send to the client. (Leblang Aff. Exs. D, E). She also tracked the types of research requested by clients and created summary reports for the salespeople on her desk. (*Id.*). Further, Plaintiff listened to analysts' research pitches, distilled the critical information and drafted summaries to be disseminated to clients. (Krause Dep. at 444). Moreover, she reviewed lengthy company reports, extracted the most important data from the report and created a written summary for the desk's clients. (Samuels Dep. at 44; Lamprecht Dep. at 38). Plaintiff also attended meetings between investors and management teams or with analysts where she was responsible for summarizing the content of the meeting, including her conclusions and impressions. (Krause Dep. at 443-45). In addition, Plaintiff engaged in cross-selling

3

with colleagues on other desks where she educated them on products and services offered by the EEMEA desk. (*Id.* at 301).

Moreover, Plaintiff coordinated and attended client events, meetings and conferences, some of which she attended alone as the desk's representative. (*Id.* at 291, 295, 308, 371, 445-47). Plaintiff also served as the captain for the desk's road shows, which entailed structuring the content of the road show for the clients in attendance and organizing the logistics, including travel. (*Id.* at 441-43; Lamprecht Dep. at 39-41, 43-44). Specifically, she researched and helped select the cities for the road shows and interfaced with attendees concerning the schedule for the road show. (Leblang Aff. Exs. D, E). She also attended certain road shows at which she hosted clients and handled any problems that they had. (*Id.*; Lamprecht Dep. at 44). In the first half of 2008 alone, Plaintiff coordinated thirty road shows and six conferences. (Leblang Aff. Ex. E). Plaintiff also took on various cost-cutting initiatives, such as analyzing different vendors and developing protocols for the desk to cut expenses. (Leblang Aff. Exs. D, E).

In order to allow Plaintiff to focus on performing more advanced job duties, an administrative assistant was hired to support the EEMEA desk and to ultimately replace Plaintiff as the Senior Specialist on the desk. (Krause Dep. at 335, 441). Plaintiff was responsible for overseeing that assistant's work, as well as the work of a temporary employee who was also assigned to the EEMEA desk to provide additional support. (*Id.* at 440, 442).

**Plaintiff's Supervisors**

Throughout her employment at Merrill, Plaintiff had positive working relationships with both of her supervisors. Samuels hired Plaintiff to work on the EEMEA desk and was her initial direct supervisor. (*Id.* at 88-89, 432). Samuels mentored and supported Plaintiff and she felt "protected by him." (*Id.* at 181, 383). Significantly, Plaintiff does not contend that Samuels discriminated against her. (*Id.* at 383, 433).

4

When Samuels transferred to London, Robert Lamprecht ("Lamprecht") became Plaintiff's supervisor and head of the EEMEA desk in New York, reporting into Samuels. (*Id.* at 88-89; Samuels Dep. at 7-8; Lamprecht Dep. at 9-10). Lamprecht was assigned as Plaintiff's mentor, which Plaintiff thought was a "blessing." (Krause Dep. at 419-20). She does not contend that he discriminated against her, nor does she contend that anyone discriminated against her based on her gender during her employment at Merrill. (*Id.* at 448).

**Anti-Discrimination and Anti-Harassment Policies and Complaint Procedure**

Upon joining Merrill as an employee and executing her offer letter, Plaintiff explicitly acknowledged that she read and understood the Firm's "A Matter of Respect" and "Equal Employment Opportunity" policies, both of which prohibit discrimination and harassment based on gender and instruct employees to report any instances of discrimination or harassment to their supervisor, Human Resources or the Firm's Ethics Hotline. (Leblang Aff. Exs. F, G, H). Moreover, shortly after she commenced her employment, Plaintiff received training on the Firm's "A Matter of Respect" policy and on Merrill's anti-discrimination and anti-harassment policies during a course entitled "Over the Line." (Leblang Aff. Ex. I). Despite the Firm's explicit policies and complaint procedure, Plaintiff admits that she never availed herself of Merrill's complaint procedure in order to complain of discrimination or harassment during the time that she worked at the Firm. (Krause Dep. at 285, 290).

**October 21, 2008 Incident**

At the end of the workday on October 21, 2008, Plaintiff voluntarily attended an impromptu gathering of her co-workers at an offsite bar near her office, P.J. Clarke's. (*Id.* at 332-34, 336, 343; Lamprecht Dep. at 76, 80). The gathering was not organized by Merrill and was not an official function of the Firm. (Lamprecht Dep. at 76). The Firm did not pay for the drinks at the bar. (*Id.* at 80). Plaintiff was one of the first people to arrive at the bar around 5:00 p.m. (Krause Dep. at 343). Her supervisor, Lamprecht, was not there when she arrived and Plaintiff did not know if he planned to attend

5

the gathering. (*Id.* at 334, 339). Plaintiff called Lamprecht and one of her female colleagues on the EEMEA desk and encouraged them to come, which they did. (*Id.* at 333-34, 345; Lamprecht Dep. at 81). Not everyone from the EEMEA desk attended the gathering. (Krause Dep. at 340). Plaintiff also encouraged other colleagues to attend the gathering because she thought it would be "a good time" and she was happy that the gathering was well attended. (*Id.* at 333, 341-43).

Plaintiff left P.J. Clarke's around 8:00 p.m. with three co-workers from other desks – Kenneth Kim ("Kim"), Simon Davey ("Davey") and Lauren Seedorf ("Seedorf") – whom she described as her friends. (*Id.* at 184-85, 187-88, 332-33, 338, 351, 372-73, 465, 467-68, 472). Kim was not Plaintiff's supervisor and he did not supervise any employees at Merrill or run a desk. (Lamprecht Dep. at 88). Plaintiff had socialized outside of work with Kim, Davey and Seedorf on prior occasions. (Krause Dep. at 311, 372-73). They arrived at Davey's apartment sometime shortly after 8:00 p.m., where they toured the apartment and shared a bottle of champagne which Davey provided. (*Id.* at 470-71, 473).

Next, the group left Davey's apartment and went to a pub, Fanelli's, where they "talked about who have you dated or hooked up with at Merrill" – a topic which Plaintiff believes she may have raised. (*Id.* at 471, 478-81). Plaintiff offered that she had dated two co-workers from Merrill. (*Id.* at 481). Plaintiff and her co-workers also discussed their use of illegal drugs. (*Id.* at 480, 489). Plaintiff left Fanelli's by approximately 9:45 p.m. (*Id.* at 479).

On the street near Fanelli's, Plaintiff spoke with Kim and invited him to her apartment to smoke marijuana. (*Id.* at 494-95). Kim inquired where Plaintiff lived and when she told him, he complained that it was far away. (*Id.* at 495). Plaintiff encouraged Kim to join her at her apartment, offering to take a taxi with Kim, to which he agreed. (*Id.*). They arrived at Plaintiff's apartment at about 10:00 p.m. – approximately five hours after Plaintiff had left the office and after visiting two bars and Davey's apartment. (*Id.* at 343, 470, 478-79, 517). At Plaintiff's apartment, Plaintiff and Kim smoked

6

marijuana. (*Id.* at 502-03). Plaintiff claims that Kim then raped her – a fact which Defendants assume to be true for purposes of this motion only. (Leblang Aff. Ex. A, at ¶ 32).

**Merrill's Actions Subsequent to October 21, 2008**

Following the incident with Kim at her apartment, Plaintiff filed rape charges against him. (*Id.* at ¶ 34). Shortly thereafter, her counsel contacted Defendants to inform the Firm that Plaintiff had filed criminal charges against Kim. (*Id.* at ¶ 36; Affirmation of Michael A. Putetti dated December 21, 2010 ("Putetti Aff.") at ¶ 2). Her counsel did not allege or suggest in any way that Plaintiff had been subjected to sexual harassment of any kind, nor that the Firm was responsible in any way for the incident between Plaintiff and Kim on October 21, 2008. (Putetti Aff. at ¶ 2). Upon receiving notice of the criminal charges against Kim, Merrill placed Kim on a paid leave of absence pending the disposition of the charges. (*Id.* at ¶ 3; Leblang Aff. Ex. A, at ¶ 36). The Firm also confirmed that no one at Merrill, including Plaintiff, had ever before complained about alleged inappropriate conduct by Kim. (Putetti Aff. at ¶ 3). Because Plaintiff was unable to return to work at that time, the Firm also provided Plaintiff with a paid leave of absence. (*Id.* at ¶ 2; Leblang Aff. Ex. A, at ¶ 36).

In early February 2009, Plaintiff decided not to return to Merrill. (Krause Dep. at 569). In or about mid-February 2009, Plaintiff, through her counsel and in the context of negotiating a monetary resolution, informed the Firm that she would not be returning to work and raised, for the first time, general allegations that she had been subjected to a hostile work environment. (Putetti Aff. at ¶ 4). At Merrill's request, Plaintiff's counsel provided details about her allegations in letters submitted to the Firm in March and April 2009. (*Id.* at ¶ 4).

Shortly after receiving this information, Merrill engaged an independent law firm, Orrick Herrington & Sutcliffe LLP ("Orrick"), to conduct an investigation into Plaintiff's claims, which Orrick memorialized in a report. (Leblang Aff. Ex. J). The attorney from Orrick investigated Plaintiff's allegations by interviewing twenty-three male and female Merrill employees and reviewing relevant

7

documents. (*Id.*). The attorney from Orrick did not investigate the incident on October 21, 2008 between Plaintiff and Kim as it was the subject of a pending criminal complaint. (*Id.*). The investigation concluded that Plaintiff's hostile work environment claims could not be substantiated. (*Id.*). The Firm subsequently requested that Plaintiff meet with its representative as part of its review into her claims, but Plaintiff refused to cooperate. (Putetti Aff. at ¶ 5).

On or about November 5, 2009, Kim pled guilty to a class E misdemeanor of Coercion in the Second Degree under N.Y. PENAL LAW § 135.60(1), a non-violent, non-sex based offense. (Leblang Aff. Ex. K). Upon resolution of the criminal charges against Kim, Merrill terminated Kim's employment based on the "loss of management's trust and confidence." (Leblang Aff. Ex. L).

Although Plaintiff believes that both of her supervisors, Samuels and Lamprecht, "were supportive of [her] return" and although she "missed her job," Plaintiff testified that she would never return to work at Merrill. (Krause Dep. at 567-70, 597). At the time of her deposition (October 15, 2010), Plaintiff continued to be paid by the Firm. (*Id.* at 570).

## Argument

### I.    SUMMARY JUDGMENT IS AN APPROPRIATE PROCEDURE FOR RESOLVING PLAINTIFF'S CLAIMS

Summary judgment "should be rendered if . . . there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) thus mandates the entry of summary judgment against a non-moving party who fails to make a showing sufficient to establish the existence of each "essential element" of that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The Second Circuit has consistently approved and reaffirmed the use of summary judgment in employment discrimination cases where, as here, there is no probative evidence to support a plaintiff's claims of employment discrimination. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). Similarly, summary judgment is regularly granted on claims of intentional and negligent

8

infliction of emotional distress. *See, e.g., Gurry v. Merck & Co.*, No. 01 Civ. 5659, 2003 U.S. Dist.

LEXIS 6161, at *20-21 (S.D.N.Y. Apr. 14, 2003) (granting summary judgment on intentional infliction

of emotional distress claim); *Gabel v. Richard Spears Kibbe & Orbe, L.L.P.*, 615 F. Supp.2d 241, 243,

245 (S.D.N.Y. 2009) (dismissing negligent infliction of emotional distress claim).

Courts have also found summary judgment to be an appropriate tool for deciding wage

and hour claims and have granted summary judgment in cases where the plaintiff alleges that he or she

was improperly classified as exempt from overtime. *See, e.g., Seltzer v. Dresdner Kleinwort Wasserstein,

Inc.*, 356 F. Supp. 2d 288, 302 (S.D.N.Y. 2005).

## II.    PLAINTIFF'S CLAIMS FOR A HOSTILE WORK ENVIRONMENT SHOULD BE DISMISSED[2]

To prevail on her hostile work environment claims under Title VII and the NYSHRL,[3]

Plaintiff must show: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of

her work environment, and (2) that there is a specific basis for imputing the alleged conduct to the

employer. *Chenette v. Kenneth Cole Prods., Inc.*, 345 Fed. Appx. 615, 619-20 (2d Cir. 2009). "When a

co-employee – as distinct from a supervisor – is alleged to have engaged in harassing activity, the

employer will generally not be liable unless the employer either provided no reasonable avenue of

complaint or knew of the harassment but did nothing about it." *Quinn v. Green Tree Credit Corp.*, 159

F.3d 759, 766 (2d Cir. 1998); *see also Davis v. New York Transit Auth.*, No. 05 Civ. 6995, 2008 U.S.

Dist. LEXIS 96991, at *16 (S.D.N.Y. Nov. 14, 2008).

---

[2] To the extent the Complaint appears to contain a disparate treatment claim, Plaintiff has evidently abandoned such a claim as it is not addressed anywhere in her pre-motion letter. In any event, such a claim would have to be dismissed based on Plaintiff's admission that she does not believe that she was discriminated against by anyone at Merrill based on her gender. (Krause Dep. at 383, 433, 447-48).

[3] Hostile work environment claims under the NYSHRL are analyzed identically to claims under Title VII. *See DeSimone v. JP Morgan/Chase Bank*, No. 02 Civ. 7039, 2004 U.S. Dist. LEXIS 25621, at *14-15 (S.D.N.Y. Dec. 21, 2004).

KL3 2803792.5

A.    **Liability Cannot Be Imputed to Defendants**
      **for the Alleged Incident on October 21, 2008**

        Assuming *arguendo* that Kim sexually assaulted Plaintiff at her apartment on October 21, 2008 and that this single incident would be sufficiently severe and pervasive to constitute a hostile work environment, liability cannot be imputed to Defendants for Kim's alleged actions.

        First, Merrill cannot be held strictly liable for Kim's actions because he was Plaintiff's *co-worker* and not a "supervisor" at Merrill for purposes of Title VII. Kim did not have "the power to hire, fire, demote, transfer, or discipline" any employees, nor did he have "virtually unchecked authority" over any employees, whereby he "directly control[ed] and supervis[ed] all aspects of [their] day-to-day activities." *Devlin v. Teachers' Ins. & Annuity Assoc. of Amer.*, No. 02 Civ. 3228, 2003 U.S. Dist. LEXIS 5226, at *5 (S.D.N.Y. April 1, 2003). *See also Feliciano v. Alpha Sector, Inc.*, No. 00 Civ. 9309, 2002 U.S. Dist. LEXIS 12631, at *30 (S.D.N.Y. July 11, 2002) (an employee is not a "supervisor" under Title VII merely because he or she has oversight responsibility; a supervisor must have "the power to hire or fire her, or alter her hours, benefits, or any other condition of employment"). Kim did not run a desk nor did he have any direct reports. (Lamprecht Dep. at 88). He was simply an employee on the Asian desk in Global Equity Markets – an entirely separate desk from Plaintiff and in a completely different reporting line than Plaintiff. (*Id.* at 86-87). Moreover, not only was Kim not a supervisor at Merrill, he was undeniably never *Plaintiff's* supervisor. (Krause Dep. at 88). *See Devlin*, 2003 U.S. Dist. LEXIS 5226, at *6 (holding that a team leader who committed a sexual assault was not a "supervisor" because he did not possess the authority required to be a supervisor and was never the plaintiff's team leader). Kim was not in a position to "impact . . . the terms and conditions" of her employment. *See id.* at *2.

        Second, liability cannot be imputed to Merrill for the alleged incident between Plaintiff and Kim at Plaintiff's apartment because it was not part of the Firm's work environment. Plaintiff admits that: (1) she voluntarily went to P.J. Clarke's, (2) not all members of her desk attended and (3) *she* was the one who encouraged her supervisor, as well as other co-workers, to attend. (*Id.* at 333-34, 336, 339-43,

10

345). *See id.* at *7 (liability may only be imputed to an employer for an offsite, off-duty incident "where the nature of the employer's business requires off-duty interactions . . . or a supervisor uses his authority to compel the victim of harassment to meet outside the office"). In addition, P.J. Clarke's is an offsite bar, unaffiliated with Merrill, and the gathering on October 21, 2008 was not initiated, organized or paid for by Merrill. (Lamprecht Dep. at 76, 80). *See id.* at *2, 8 (employer "cannot be held liable for what transpired at the off-premises social event" where the employer did not pay for or sponsor the event and the event was not under the employer's supervision or control).

Most critically, the alleged assault did not occur at P.J. Clarke's, but at Plaintiff's apartment, five hours after Plaintiff left work, after she visited two bars and Davey's apartment with Kim and only after Plaintiff invited Kim to her apartment in order to take illegal drugs. Plaintiff's interactions with Kim on the evening of October 21, 2008 were purely social and the mere fact that Kim was Plaintiff's co-worker does not transform the alleged incident into a work-related occurrence. Indeed, "employers are not responsible under Title VII for hostile sexual acts resulting from nonwork-related, off-duty interactions between co-employees because those actions are not part of the work environment." *See id.* at *7-8 (holding that an employer could not be liable for a sexual assault by an employee at a bar where co-workers were gathered to celebrate a promotion because it occurred at a social event outside of work). *See also Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 280 (S.D.N.Y. 2002) (dismissing a hostile work environment claim where a sexual touching "did not occur during work hours or on work grounds, but rather after work at an off-site restaurant"); *Hendricks v. 333 Bayville Ave. Rest. Corp.*, 260 A.D.2d 545, 546 (2d Dep't 1999) (employer is not liable under the NYSHRL for a rape occurring at an offsite party of employees because "[t]here is no evidence that the [employer] encouraged, condoned, or approved of this conduct"). Plaintiff acknowledges that the incident at her apartment on October 21, 2008 is an issue between herself and Kim as she has filed a separate civil lawsuit against him. (*See* Leblang Aff. Ex. M).

11

Third, Defendants cannot be held responsible for Kim's actions on October 21, 2008 because Plaintiff cannot show that Defendants failed to provide a "reasonable avenue of complaint or knew of the harassment but did nothing about it." *See Quinn*, 159 F.3d at 766. Plaintiff does not allege that there was no avenue of complaint at Merrill. (Krause Dep. at 285-90). Thus, she must demonstrate that Merrill knew or should have known about the "harassment" and failed to take appropriate action. Before the alleged incident on October 21, 2008, Defendants never received any complaints about Kim, including from Plaintiff, and Defendants were therefore not on notice of any prior alleged improper conduct by Kim. (*Id.* at 222-23, 285, 290, 329, 374, 464; Putetti Aff. at ¶ 3). *See Davis*, 2008 U.S. Dist. LEXIS 96991, at *17 (no liability for employer where the plaintiff never made a complaint of sexual harassment despite complaint procedure); *Devlin*, 2003 U.S. Dist. LEXIS 5226, at *8-9 (employer not liable where the alleged harasser was never previously accused of sexual harassment).

Furthermore, as soon as Defendants learned of the alleged incident, the Firm promptly removed Kim from the workplace and placed him on leave until the disposition of the criminal charges against him. (Leblang Aff. Ex. A at ¶ 36; Putetti Aff. at ¶ 3). Defendants also permitted Plaintiff to take a paid leave at her request, on which she continued to remain as of the time of her deposition. (Leblang Aff. Ex. A at ¶ 36; Putetti Aff. at ¶ 2). In addition, shortly after Kim's plea – which was to a non-sexual, non-violent crime – Defendants terminated his employment. (Leblang Aff. Ex. L). Based on these facts, Defendants clearly took "immediate and appropriate corrective action" in response to Plaintiff's charges against Kim. *See McNally v. Posterloid Corp.*, 148 Fed. Appx., 23, 25 (2d Cir. 2005). Courts faced with similar fact patterns have ruled, as a matter of law, that an employer's burden to take sufficient corrective action is satisfied when the employer simply removes an alleged harasser from the complainant's immediate work area. *See, e.g., id.* (employer took appropriate corrective action in separating the plaintiff from a co-worker following a purported sexual assault and thus summary judgment was proper); *Devlin,*

2003 U.S. Dist. LEXIS 5226, at *9 (employer's action in moving the alleged harasser away from the

plaintiff's floor was an adequate response by the employer).

**B.      Plaintiff Cannot Demonstrate the Existence of a
         Hostile Work Environment in Merrill's Workplace**

Plaintiff's remaining hostile work environment allegations also cannot withstand

summary judgment on several grounds.  To begin with, her claims inevitably fail based on her admission

that she does not even believe that she was discriminated against based on her gender.  When asked if she

contends that anyone at Merrill discriminated against her because she is a woman, Plaintiff responded

that, "I'd like to believe that that's not the case." (Krause Dep. at 447-48).  Based on this admission

alone, Plaintiff's sex harassment claims must be dismissed.

Plaintiff's hostile work environment claims also cannot survive summary judgment

because the alleged conduct by her *co-workers* was episodic and almost entirely gender-neutral.

Consequently, Plaintiff cannot meet her burden of showing that such conduct was "severe and pervasive"

as she fails to "produce evidence that the work place is permeated with discriminatory intimidation,

ridicule, and insult, that . . . alter[s] the conditions of [her] employment." *Garcia v. New York Admin. of

Children's Servs.*, No. 03 Civ. 05271, 2007 U.S. Dist. LEXIS 71273, at *17-18 (S.D.N.Y. Sept. 26,

2007), aff'd 354 Fed. Appx. 476 (2d Cir. 2009).  "[I]solated remarks or occasional episodes of

harassment will not merit relief under Title VII; in order to be actionable, the incidents of harassment

must occur in concert or with a regularity that can reasonably be termed pervasive." *Tomka v. Seiler

Corp.*, 66 F.3d 1295, 1306 n.5 (2d Cir. 1995).  Moreover, in order to sustain a claim of sex harassment, an

employee must demonstrate that the alleged improper conduct is gender based, which Plaintiff cannot do.

*See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work . . .

is actionable under Title VII only when it occurs *because* of an employee's sex, or other protected

characteristic.").  In addition, Plaintiff was a willing participant in much of the conduct of which she now

complains, thus belying her argument that she found such conduct to be offensive. *See Sacco v. Legg*

13

*Mason Inv. Counsel & Trust Co.*, 660 F. Supp. 2d 302, 315 (D. Conn. 2009) (plaintiff's participation in the conduct of which she later complained cut against her claim that she perceived such conduct to be abusive).

Outlined below are the hostile work environment allegations raised by Plaintiff, none of which are sufficient to sustain her claims.

**Kim's Alleged Conduct before October 21, 2008**

As explained above, Kim was Plaintiff's co-worker, not her supervisor or anyone's supervisor at Merrill. *See infra* p. 10. Plaintiff and Kim were friends and they socialized together outside of work. (*Id.* at 311, 372-73). Plaintiff encouraged Kim to go out with her outside of work and gave him a hard time when he would not go. (*Id.* at 314). Plaintiff teased Kim on occasion and discussed her dating life with him. (*Id.* at 154, 236-37, 314). They spoke regularly at work and went to breakfast together. (*Id.* at 322, 372-73, 455).

Plaintiff asserts that Kim engaged in the following alleged improper conduct prior to the incident on October 21, 2008: (1) he tried to kiss her one night in April 2007 at her apartment before they went to a hookah bar and that they may have kissed in May 2008 at a co-worker's birthday party at a bar on a Saturday night; and (2) he sent a "raging" e-mail on October 20, 2008. (*Id.* at 323, 325-29, 378). None of this alleged conduct amounts to sex harassment.

Even if Kim tried to kiss Plaintiff at her apartment before they went to a bar together and at a bar during a party on a weekend night, Merrill is not responsible for off-duty, after-hours sexual encounters between co-workers which occur in purely social settings. *See infra* p. 10-12. Indeed, Plaintiff admitted that the attempted kiss at her apartment was not a Merrill event. (*Id.* at 329). Moreover, Plaintiff testified that she drank so much at the party in May 2008 that she cannot recall whether she initiated the kiss, or if it even occurred. (*Id.* at 325-27, 376-77). In addition, Plaintiff can hardly claim that she was offended by Kim's conduct when she continued to socialize with him following

14

these two alleged incidents, including on the evening of October 21, 2008 when she invited him to her apartment. (*Id.* at 324).

Furthermore, even if Merrill could be held liable for Kim's purported attempts to kiss Plaintiff, such conduct is not sufficiently severe and pervasive to meet the standard for a hostile work environment. *See Chenette*, 345 Fed. Appx. at 619 (co-worker's act of kissing the plaintiff in the workplace did not amount to sexual harassment); *Sutton v. New York City Transit Auth.*, No. 02-CV-1441, 2009 U.S. Dist. LEXIS 118309, at *15 (E.D.N.Y. Sept. 30, 2009) (a supervisor's unwanted kiss was "inappropriate" but was not sufficiently severe or pervasive); *Thomas*, 232 F. Supp. 2d at 280 (noting that "Title VII was not designed to act as a 'general civility code'" and finding that an alleged squeezing of the plaintiff's buttocks was not sufficiently severe and pervasive to demonstrate a hostile work environment); *Feliciano*, 2002 U.S. Dist. LEXIS 12631, at *23-24 (no hostile work environment based on alleged romantic overtures, including a kiss which occurred outside of the workplace).

Second, with respect to the supposed improper e-mail that Kim sent to Plaintiff on October 20, 2008, the e-mail merely states, "Why are you messaging me? Oh, Davey busy?" (*Id.* at 461-62). When Plaintiff was asked if this e-mail was of a sexual nature, she admitted that she did not "know if [Kim] meant to send a sexual message," but that she believed it was a "raging message." (*Id.* at 462-63). This e-mail, which is indisputably gender-neutral on its face and which Plaintiff admits was not necessarily sexual, can hardly be deemed to contribute toward a hostile work environment. *See Brown*, 257 F.3d at 255-56 (where the behavior cited by the plaintiff was unrelated to her sex, she was unable to show a hostile work environment).

**Purported Cursing by Plaintiff's Co-Workers**

Plaintiff's attempt to base her hostile work environment claims on purported cursing by her co-workers also fails because the alleged cursing was almost entirely gender-neutral and not directed at her. She cites only one example where a co-worker actually cursed at her, which was "something to

15

the effect of, 'What the F is your problem' or "are you fucking kidding me.'" (*Id.* at 172). Not only is such language not sex-based, but Plaintiff also acknowledges that her co-worker cursed because she made a mistake, that her supervisor addressed this incident and that such conduct by this co-worker did not occur again. (*Id.* at 170-72, 409-11). Plaintiff also identifies only a single instance of cursing that was related to gender, which was someone using the word "cunt" on one occasion. (*Id.* at 205-07). Plaintiff concedes that this remark was not directed at her and that she does not even know who made this remark. (*Id.*). With these two discrete exceptions, all of the cursing which Plaintiff allegedly experienced at Merrill was gender-neutral and not directed at her. Such conduct does not even begin to approach the level of severity or pervasiveness required to demonstrate a hostile work environment. *See Sacco*, 660 F. Supp. 2d at 315-16 (no hostile work environment where the words "bitch" and "whore" were used but never directed at the plaintiff); *DeSimone v. JP Morgan/Chase Bank*, No. 02 Civ. 7039, 2004 U.S. Dist. LEXI 25621, at *20 (S.D.N.Y. Dec. 21, 2004) (supervisor's frequent use of the word "fuck" was not gender discrimination where there was no evidence that the language was directed at women ); *Lamar v. Nynex Serv. Co.*, 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (alleged sexual harassment was not sufficiently severe or pervasive where the bulk of the purported improper conduct was not directed specifically toward the plaintiff).

Plaintiff also cannot persuasively argue that she was offended by the alleged cursing in her work environment as she admitted that she used the words "shit" and "fuck" and that at the time, she believed that it was proper to curse in the workplace. (*Id.* at 55, 191-93, 196-99). *See Sacco*, 660 F. Supp. 2d at 615 (plaintiff's own use of profanity at work belied her argument that she found such conduct to be offensive).

**Alleged Alcohol-Infused Environment**

Next, Plaintiff feebly attempts to predicate her sexual harassment claims on an alleged alcohol-infused work environment. (Leblang Aff. Ex. A, at ¶¶ 29, 30). Even if Plaintiff's factual

16

assertions were true, which Merrill flatly denies, Plaintiff has failed to offer any evidence linking the alleged alcohol-infused environment to her gender. Again, in order for conduct to form the foundation of a hostile work environment, it must be gender-based conduct. *See Chan v. NYU Dowtown Hosp.*, No. 03 Civ. 3003, 2005 U.S. Dist. LEXIS 40243, at *23 (S.D.N.Y. Feb. 14, 2004) ("facially neutral behavior that plaintiff has failed to clothe in discriminatory dress, clearly fails to meet the necessary standard for hostility").

Despite Plaintiff's instant claims that she was offended by the alleged drinking in her work environment, she testified that she never felt pressured to drink at a work-related event. (Krause Dep. at 298). Also, by her own admission, Plaintiff frequently encouraged her co-workers to go out for drinks. (*Id.* at 108-09, 313-14, 317-19).

**Alleged Conduct by Canteen Workers**

Plaintiff also asserts that the workers at the canteen (a food service area) on her floor at Merrill contributed to an alleged hostile work environment by engaging in the following conduct: (1) they called her "honey," "baby," "sexy," and "darling;" (2) one of the workers stated that he was "looking forward to seeing her around;" (3) one of the workers said, "ooh can't concentrate with you in that skirt" and moved his body left to right while "ooh-ing and ahh-ing;" and (4) on Fridays, one of the workers would say that he was going salsa dancing, ask her if she wanted to go salsa dancing and performed a salsa move. (*Id.* at 261-62, 397-99; Leblang Aff. Ex. A, at ¶ 27).

To begin with, the canteen workers were neither Merrill employees, nor supervisors at the Firm or Plaintiff's supervisors. (Krause Dep. at 261; Leblang Aff., at ¶ 27). Plaintiff also was not required to interact with the canteen workers in order to perform her job and by her own admission, she could have easily avoided them by going to a cafeteria on a different floor. (Krause Dep. at 456). Additionally, the purported remarks were certainly not sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. *See Nieves v. Dist. Council 37 AFSCME*, No. 04 Civ. 8181,

17

2009 U.S. Dist. LEXIS 1112653, at *17-19 (S.D.N.Y. Nov. 24, 2009) (comments that the plaintiff was "sexy" and other sexual jokes did not rise to the severe and pervasive level); *Fermin v. Marriott Corp.*, No. 99 CV 3011, 2002 U.S. Dist. LEXIS 19925, at *3-4 (E.D.N.Y. Aug. 9, 2002) (sex harassment claim dismissed where the plaintiff's supervisor called her "sweetheart," "sweetie," "honey" and "baby").

**Allegation Concerning Co-Worker's Instant Message**

Plaintiff alleges that a male co-worker on another desk sent her an inappropriate instant message ("IM"). (*Id.* at 448-53). On March 26, 2007, Plaintiff wrote an IM to the co-worker, which stated, "I'm in a black mood," to which he responded, "Everything black." (*Id.* at 449-50). On that day, Plaintiff was wearing all black clothing, including her shoes, dress and headband and Plaintiff assumes that her co-worker's response was referring to her bra and underwear also being black. (*Id.* at 449-51).

Plaintiff's claim that this single communication contributed to a hostile work environment does not add up. First, on its face, this IM is not sexual, gender-based or harassing in any way and Plaintiff merely assumes, with no basis, that her co-worker's response was referring to her undergarments. *See Kamrowski v. Morrison Mgmt. Specialist*, No. 05 CV 9234, 2010 U.S. Dist. LEXIS 103290, at *47-48 (S.D.N.Y. Sept. 29, 2010) (co-workers' conduct did not create a hostile work environment where "there is no reason to conclude that the conduct was aimed at Plaintiff because of her gender"). Second, even if a sexual implication could be read into the IM, one isolated comment cannot create a hostile work environment. *See, e.g.*, *Lane v. Collins & Aikman Floorcoverings, Inc.*, No. 00 Civ. 3241, 2001 U.S. Dist. LEXIS 17757, at *21-22 (S.D.N.Y. Oct. 30, 2001) (granting summary judgment where six incidents of alleged discriminatory comments made by several employees over a two-year period were too "infrequent" and "isolated" to constitute a hostile work environment); *Lamar*, at 185 (rejecting a hostile work environment based on five allegedly sexual incidents over approximately seventeen months and stating that "the incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief"). Third, Plaintiff cannot credibly contend that she was offended

18

by this interchange because she continued to correspond with her co-worker following the alleged hostile

remark. (*Id.* at 451-52). Fourth, shortly after Plaintiff and her co-worker exchanged IMs on this occasion,

he moved to a different floor and Plaintiff did not see him again. (*Id.* at 229-30).

**Alleged Harassment by Samuel Kim**

        Samuel Kim, an employee working in Korea whom Plaintiff did not even know, sent her

an e-mail and a Bloomberg message on November 2, 2008 which both stated, "Hi.  Can you plz give Ken

Kim a call?  Thanks." (*Id.* at 401, 404).  Plaintiff testified that she found such communications harassing

because she "assumed" that Samuel Kim was friends with Kim and that he knew of the alleged sexual

assault. (*Id.* at 401-03, 405).  Not only are these communications not gender-based and not harassing on

their face, but Samuel Kim testified that he did not know Plaintiff and that he had no knowledge of the

alleged incident between Plaintiff and Kim or of her claims against Kim. (Kim Dep. at 40, Leblang Aff.).

**C.    Plaintiff's Failure to Complain of Alleged Sexual Harassment
During Her Tenure at the Firm Compels Dismissal of Her Claim**

        Even if any of the alleged improper conduct by Plaintiff's co-workers actually rose to the

level of a hostile work environment – which it does not – such conduct cannot be imputed to Defendants.

Tellingly, during her two years at the Firm, Plaintiff never brought any complaints of sexual harassment

to her supervisors or Human Resources, despite her awareness of the Firm's anti-discrimination and anti-

harassment policies and complaint procedure. (Krause Dep. at 285-90).  The fact that she failed to do so

negates any liability for alleged discrimination by Defendants. *See Davis*, 2008 U.S. Dist. LEXIS 96991,

at *16-17 ("[T]he existence of an anti-harassment policy with complaint procedures is an important

consideration in determining whether an employer took reasonable steps both to prevent discriminatory

harassment and to remedy the harassing conduct promptly once it was brought to the employer's

attention.")

        And, as soon as Defendants learned of Plaintiff's allegations – months after the alleged

incident with Kim, after her last day of active employment and only in the context of a monetary demand

19

– they promptly hired an independent law firm to conduct an exhaustive investigation into her allegations. In taking such action, Defendants indisputably exercised reasonable care and took appropriate corrective action in response to Plaintiff's claims. *See, e.g., Chenette*, 345 Fed. App. at 620 (no hostile work environment where "rather than tolerating a hostile work environment, [defendant] acted to forestall it" by conducting an investigation after receiving plaintiff's complaints); *Galarza v. American Home Assur. Co.*, 99 F. Supp. 2d 251, 256 (E.D.N.Y. 2000) (liability may not be imputed to employer where it provided a reasonable avenue of complaint and attempted to investigate the employee's claims); *Davis*, 2008 U.S. Dist. LEXIS 96991, at *16-18 (no employer liability where plaintiff could not show that defendant knew of the harassment but did nothing about it because plaintiff did not complain until months after his termination and where employer took immediate remedial action upon learning of his complaint).

### III.   PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED

The factual allegations on which Plaintiff unavailingly tries to base her hostile work environment claim do not even come close to meeting the "rigorous, and difficult to satisfy" standard for proving a claim of intentional infliction of emotional distress ("IIED"). *See Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001). Under New York law, an IIED claim requires: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a casual connection between the conduct and the injury; and (4) severe emotional distress." *Id.* Plaintiff must show conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.*

Much as liability cannot be imputed to Defendants for the alleged incident between Plaintiff and Kim on October 21, 2008 under a hostile work environment claim as detailed above under Point II (*see infra* p. 10-13), liability cannot be imputed to Defendants under a theory of IIED. An

20

employer cannot be vicariously liable for the alleged intentional infliction of emotional distress committed by an employee "because employers cannot be held liable for the intentional torts committed by employees for personal motives outside the normal scope of their employment." *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 492 (S.D.N.Y. 1999). Plaintiff is also unable to prove that Defendants had an "intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress" because prior to the incident on October 21, 2008, Defendants were not on notice of any alleged improper behavior by Kim as neither Plaintiff nor any other employee at the Firm had previously complained about him. (Krause Dep. at 222-23, 285, 290, 329, 374, 464; Putetti Aff. at ¶ 3).

With respect to Plaintiff's remaining claims about her work environment, courts have consistently found that "[a]cts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of IIED because the conduct alleged is not sufficiently outrageous." *Stevens v. New York*, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009) (dismissing IIED claim where the plaintiff alleged that the defendant made two racially insensitive remarks to him). *See also Gurry v. Merck & Co.,* No. 01 Civ. 5659, 2003 U.S. Dist. LEXIS 6161, at *22 (S.D.N.Y. Apr. 14, 2003) (granting summary judgment where the plaintiff alleged that she was taunted by her co-workers, "frightened and scared" by their comments and unfairly criticized); *Horsford v. Salvation Army*, No. 99 Civ. 5721, 2001 U.S. Dist. LEXIS 17592, at *32-33 (S.D.N.Y. Oct. 26, 2001) (several comments by the plaintiff's supervisors concerning her national origin did not meet "the high threshold required by New York law" on an IIED claim, which requires the plaintiff to prove "an unrelenting campaign [of] day in, day out harassment or that the harassment [is] accompanied by physical threats"); *Burrell v. City Univ. of New York*, 995 F. Supp. 398, 416 (S.D.N.Y. 1998) (allegations regarding sexual harassment do not meet "extremely difficult to satisfy" standard for an IIED claim where plaintiff alleged that her supervisor made romantic advances toward her and engaged in further harassment when she rebuffed him). In alleging that her co-workers engaged in

21

purportedly improper conduct, which was not gender based and occurred only on a sporadic basis, Plaintiff falls far short of demonstrating the requisite "extreme and outrageous conduct." Plaintiff also cannot show that Defendants intentionally or recklessly caused such conduct as Defendants were not aware of such supposed conduct based on Plaintiff's failure to complain. (Krause Dep. at 285, 290).[4]

## IV.   PLAINTIFF'S WAGE AND HOUR CLAIMS SHOULD BE DISMISSED

Plaintiff alleges that she was improperly classified as exempt and is thus entitled to overtime under the FLSA and the New York Labor Law. Plaintiff, however, was properly classified as exempt under the administrative exemption and her claims therefore cannot survive summary judgment.[5]

Section 13(a) of the FLSA, 29 U.S.C. § 213(a)(1), exempts employers from paying overtime to employees who qualify as "bona fide executive, administrative or professional employees." 29 U.S.C. § 213(a)(1). "[E]mployees whose jobs fall within one of the enumerated categories are not entitled to certain protections of the [FLSA] . . . [including] overtime no matter how many hours they work each week." *Schwind v. EW & Assoc., Inc.*, 357 F. Supp. 2d 691, 697 (S.D.N.Y. 2005).

An administrative employee is defined as one:

(1)   Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ;

---

[4] Equally specious is Plaintiff's claim of negligent infliction of emotional distress ("NIED"). Many courts bar NIED claims against employers because the New York Workers' Compensation Law provides the exclusive remedy for negligence claims against employers. *See, e.g., Stevens*, 691 F. Supp. 2d at 397 (dismissing NIED claim because of the exclusivity of the Workers' Compensation Law); *Gabel v. Richards Spears Kibbe & Orbe, LLP*, 615 F. Supp. 2d 241, 245 (S.D.N.Y. 2009) (same). Even where courts have made exceptions to allow NIED claims to proceed, such claims are only permitted under the "bystander theory" or the "direct duty theory," both of which depend upon "serious physical injury or death inflicted . . . on a member of the plaintiff's immediate family or the endangerment of a plaintiff's physical safety." *Dollman v. Mast Indus., Inc.*, No. 08 Civ. 10184, U.S. Dist. LEXIS 84137, at *28 (S.D.N.Y. Aug. 17, 2010).

[5] The New York Labor Law is analyzed in the same manner as the FLSA for purposes of determing the applicability of the administrative exemption. *See Mota v. Imperial Parking Sys.*, No. 08 Civ. 9526, 2010 U.S. Dist. LEXIS 87593, at *5, n.2 (S.D.N.Y. Aug. 24, 2010).

KL3 2803792.5

(2)    Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3)    Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a) (2010). Thus, an employee is properly classified as exempt under the administrative exemption if the aforementioned salary-basis test and duties test are satisfied. *See Seltzer*, 356 F. Supp. 2d at 300. Here, the salary-basis test is clearly met as Plaintiff was paid a salary of at least $55,000 throughout her employment with Defendants. (Leblang Aff. Ex. B).

The duties test is also met as a matter of law. First, Plaintiff performed office work directly related to "assisting with the running or the servicing of [Merrill's] business" and to the "general business operations of [Merrill's] customers." 29 C.F.R. § 541.201(a), (c). The Department of Labor has specifically recognized that, "[e]mployees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include . . . marketing, servicing or promoting the employer's financial products." *See id.* § 541.203(b). A significant portion of Plaintiff's job was focused on the marketing and promotion of the Firm's financial services and products to potential and existing clients and on business development activities. Indeed, Plaintiff spent the bulk of her time responding to client research requests, creating investment summaries, coordinating and participating in client events, meetings, conferences and road shows and cross-selling to other desks. (Krause Dep. at 291, 295, 301, 308, 371, 441, 443-45; Lamprecht Dep. at 40-41, 44). All of these tasks were performed with the goal of marketing the Firm and its products and services to existing and potential clients.

Second, because Plaintiff's position involved the "comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered," her primary duties undoubtedly included the exercise of discretion and independent judgment. *See id.* § 541.202(a). In this context, the decisions made by the employee "may consist of

23

recommendations for action, rather than actually taking of action," as well as those decisions that are subject to a supervisor's approval. *See id.* § 541.202(c).

In an analogous case, a financial services employer was granted summary judgment where a senior level administrative assistant was found to exercise discretion and independent judgment in performing her job duties, which included arranging travel, scheduling appointments and completing expense reports. *See Seltzer,* 356 F. Supp. 2d at 292, 301-02. Not only did the court find that the plaintiff exercised discretion and independent judgment, but its decision was also influenced in part by the fact that the plaintiff was the "lead assistant" and oversaw the work of other administrative assistants. *Id.* at 292, 302. In other contexts, employees who exercise discretion and independent judgment in interfacing with clients and serving as the liaison between clients and the employer have been found to be administratively exempt. *See O'Neill-Marino v. Omni Hotels Mgmt. Corp.,* No. 99 Civ. 3793, 2001 U.S. Dist. LEXIS 2138, at *25-26 (S.D.N.Y. March 1, 2001) (holding that an employee who coordinated certain aspects of client events, such as banquet set-up and transportation, and solved clients' problems during such events was administratively exempt); *Schwind,* 357 F. Supp. 2d at 705 (finding an employee who handled client relations and services and acted as a liaison between his employer and its major clients to be exempt); *Morales v. Zondo, Inc.,* No. 00 Civ. 3494, U.S. Dist. LEXIS 508, at *11 (S.D.N.Y. Jan. 25, 2001) (employee was administratively exempt where she participated in meetings with customers, coordinated communications with vendors and maintained product information files).

Similarly, in arranging client events and acting as the captain for road shows, Plaintiff made decisions concerning the content and logistics of the events, including the venues, travel and schedules for such events. (Krause Dep. at 441, 443; Lamprecht Dep. at 40-41, 44). When she attended client events and road shows, Plaintiff liaised with clients and ensured that the events went smoothly for them. (Leblang Aff. Exs. D, E). Furthermore, with respect to client requests for research, she considered and selected the appropriate research materials to send to the client based on the nature of the request and

24

she subsequently analyzed the categories of requests that the desk had received. (*Id.*). In drafting client materials, such as summaries of client meetings and conferences, research pitches and company reports, Plaintiff determined the content of such materials. (Krause Dep. at 596, 418, 445-47; Samuels Dep. at 44; Lamprecht Dep. at 38). Plaintiff initiated cost-cutting measures, researched vendors, and developed policies for decreasing the desk's expenses. (Leblang Aff. Exs. D, E). Also, like in *Seltzer*, Plaintiff served as the primary assistant on the EEMEA desk and had assistants working under her, whom she supervised. (Krause Dep. at 335, 440-42).

As Plaintiff and her supervisors testified, her position was critical to the business operations of the EEMEA desk. (*Id.* at 582; Samuels Dep. at 30). An employee's work is related to "a matter of significance" where the employee's assignments are related to the operation of a particular segment of the business. *See* 29 C.F.R. § 541.205(c). Indeed, "Plaintiff's duties involved the very business" of Merrill – marketing and providing financial services and products to clients. *Schwind*, 357 F. Supp. 2d at 705.

### Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety and grant such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         December 21, 2010

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By:   /s/ Kevin B. Leblang
      Kevin B. Leblang
      Eliza A. Kaiser
      Katrina L. Baker

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

***Attorneys for Defendants***

25

To:    John L. Ciarelli, Esq.
Patricia A. Dempsey, Esq.
CIARELLI & DEMPSEY
737 Roanoke Avenue
Riverhead, New York 11901

Michael T. Cornacchia, Esq.
260 Madison Avenue, 22nd Floor
New York, New York 10016

*Attorneys for Plaintiff*