UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————— x
KAITLIN KRAUSE,

       Plaintiff,

  - against -          10 CV 2603 (RMB)(JLC)

MERRILL LYNCH, PIERCE, FENNER & SMITH,
INCORPORATED, MERRILL LYNCH & CO., INC., and
BANK OF AMERICA CORPORATION,

       Defendants.
——————————————————————— x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## Table of Contents

**Page**

Preliminary Statement ...........................................................................................................................1

Argument..................................................................................................................................................1

I. PLAINTIFF HAS NOT PRESENTED EVIDENCE OF A HOSTILE WORK ENVIRONMENT.............................................................................................................1

    A. Plaintiff Has Not Established That Liability May Be Imputed to Defendants for the Alleged Incident on October 21, 2008 ..................................1

    B. Plaintiff Has Not Demonstrated the Existence of a Hostile Work Environment in Merrill's Workplace ...............................................................3

        Kim's Alleged Conduct before October 21, 2008 ........................................................3

        Purported Inappropriate Language by Merrill Employees ........................................5

        Alleged Conduct by Canteen Workers............................................................................6

        Alleged Harassment by Samuel Kim ..............................................................................7

    C. Plaintiff Has Not Established That She Complained of Alleged Sexual Harassment and That There Was No Reasonable Avenue of Complaint ............7

II. PLAINTIFF HAS NOT SHOWN THAT SHE WAS MISCLASSIFIED UNDER THE FLSA AND THE NEW YORK LABOR LAW .................................................8

Conclusion............................................................................................................................................10

## Table of Authorities

### CASES

Page(s)

*Big Apple Tire, Inc. v. Telesector Res. Grp., Inc.*,
476 F. Supp. 2d 314 (S.D.N.Y. Feb. 13, 2007) ................................................................. 7

*Cooper v. Allied Barton Sec. Srvs.*,
No. 80 Civ. 10669, 2010 WL 2746333 (S.D.N.Y. July 8, 2010) ..................................... 5

*Devlin v. Teachers' Ins. & Annuity Assoc. of Amer.*,
No. 02 Civ. 3228, 2003 U.S. Dist. LEXIS 5226 (S.D.N.Y. April 1, 2003) ............ 1, 2 & n.3, 3

*Ferris v. Delta Airlines*,
277 F.3d 128 (2d Cir. 1993) ..................................................................................... 3 & n.4

*Gelin v. Geithner*,
No. 06-CV-10176, 2009 U.S. Dist. LEXIS 24865 (S.D.N.Y. Mar. 26, 2009),
*aff'd*, 376 Fed. Appx. 127 (2d Cir. 2010) ........................................................................ 2

*Lamar v. Nynex Serv. Co.*,
891 F. Supp. 184 (S.D.N.Y. 1995) .................................................................................. 4

*Lane v. Collins & Aikman Floorcoverings, Inc.*,
No. 00 Civ. 3241, 2001 U.S. Dist. LEXIS 17757 (S.D.N.Y. Oct. 30, 2001) .................. 4

*Nieves v. Angelo, Gordon & Co.*,
341 Fed. Appx. 676 (2d Cir. 2009) ................................................................................. 5

*Quinn v. Green Tree Credit Corp.*,
159 F.3d 759 (2d Cir. 1998) ............................................................................................ 4

*Schwind v. EW & Assoc.*,
357 F. Supp. 2d 691 (S.D.N.Y. 2005) ........................................................................... 10

*Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*,
356 F. Supp. 2d 288 (S.D.N.Y. 2005) ......................................................................... 9, 10

*Sutton v. N.Y. Transit Auth.*,
No. 02-CV-1441, 2009 U.S. Dist. LEXIS 118309 (E.D.N.Y. Sept. 30, 2009) ............... 7

*Tutko v. James River Paper Co.*,
No. 98-9663, 1999 U.S. App. LEXIS 28455 (2d Cir. Oct. 29, 1999) ........................ 5, 6

### STATUTES

Local Rule 56.1(d) ................................................................................................................. 1

**Preliminary Statement**

In opposing Defendants' motion for summary judgment, Plaintiff has failed to identify any material factual dispute requiring a trial or any factual bases supporting her hostile work environment claim or her wage and hour claim.[1] To the extent that Plaintiff attempts to argue that a material factual dispute exists, she cites to no evidence in the record to substantiate such conclusory allegations, as required under Local Rule 56.1(d). Indeed, in many instances, her own testimony flatly contradicts her hollow assertions. Accordingly, Defendants' motion for summary judgment should be granted.

**Argument**

### I.   PLAINTIFF HAS NOT PRESENTED EVIDENCE OF A HOSTILE WORK ENVIRONMENT

**A.   Plaintiff Has Not Established That Liability May Be Imputed to Defendants for the Alleged Incident on October 21, 2008**

Plaintiff contends that Merrill should be liable for the alleged assault at her apartment because Kim held the corporate title of Director and because hours before the alleged assault, she and Kim attended an informal, after-hours gathering of co-workers at P.J. Clarke's, an offsite bar. (Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Br.") at 6-7). Plaintiff does not come close to meeting the standard for imputing co-worker misconduct to an employer.

In *Devlin v. Teachers' Ins. & Annuity Assoc. of Am.*, which Plaintiff does not even attempt to distinguish, summary judgment was granted. No. 02 Civ. 3228, 2003 U.S. Dist. LEXIS 5226 (S.D.N.Y. April 1, 2003). In that case, at the encouragement of supervisors, the plaintiff's co-workers gathered at a bar to celebrate a colleague's promotion and later that evening, the plaintiff was sexually assaulted by another employee in the bathroom. *Id.* at *2-3. Although the employee was a "team leader"

---

[1] Plaintiff's failure to include even a single citation to the record in the section of her brief addressing the hostile work environment claim demonstrates the utter lack of any factual dispute with respect to such an allegation. Moreover, the fact that Plaintiff completely fails to address her claims of intentional or negligent infliction of emotional distress compels that such claims be dismissed.

with input into other employees' evaluations, he was never the plaintiff's team leader and had no authority to "hire, fire, demote, transfer, or discipline" any employees and thus was not a supervisor. *Id.* at *5. Similarly, here, although Plaintiff attempts to paint Kim with supervisory authority based purely on his corporate title,[2] she has not presented a shred of evidence that Kim ever had supervisory authority over her or any other employees and she admits that Lamprecht, not Kim, was her supervisor. (Lamprecht Dep. at 88; Krause Dep. at 334). *See also Gelin v. Geithner*, No. 06-CV-10176, 2009 U.S. Dist. LEXIS 24865 at *84 (S.D.N.Y. Mar. 26, 2009) (an individual was not a "supervisor" based merely on the plaintiff's assertion that he was a "Group Manager"), *aff'd*, 376 Fed. Appx. 127 (2d Cir. 2010).

After determining that the alleged assailant was not a supervisor, the court next examined whether any supervisor used his or her authority to compel the plaintiff to meet outside of the office or whether the "nature of the employer's business requires off-duty interactions." *Devlin*, 2003 U.S. Dist. LEXIS 5226, at *7. Despite the fact that a supervisor's secretary sent an e-mail invitation for the gathering, the court found no evidence from which "a reasonable fact-finder could infer anything remotely approaching compulsion." *Id.* at *7-8. Here, there is certainly no evidence that Plaintiff was compelled to go to P.J. Clarke's as she does not dispute that: (1) she *voluntarily* attended the gathering; (2) it was not an official function of the Firm or sponsored or paid for by Merrill; and (3) *she* encouraged Lamprecht to attend. (Krause Dep. at 333-34, 336; Lamprecht Dep. at 76, 81). Although she now alleges that "everyone" was encouraged to attend the gathering by Will Morelock ("Morelock"), head of the Europe Sales desk (Pl. Stmt. 56.1 at ¶ 77), Plaintiff testified that *she* invited Morelock and that he did not even attend the gathering. (Krause Dep. 341-43).[3] Not only has Plaintiff failed to demonstrate that she

---

[2] Plaintiff's claim that Kim's corporate title of Director rendered him her "supervisor" defies logic. If this assertion was true, Plaintiff effectively would have been supervised by the approximately two hundred and eighty Directors in Global Equity Markets in the United States at the time. (Putetti Aff. at ¶ 6).

[3] To the extent that Plaintiff claims that she subjectively felt compelled to attend the gathering, such an allegation "is irrelevant in the absence of any objective evidence of such [requirement] or even evidence that any other employee felt similarly." *Id.* at *8.

2

was compelled to go to P.J. Clarke's, but she has not pointed to even a scrap of evidence that she was compelled by a Merrill supervisor to go to her apartment with Kim, her co-worker.

Plaintiff has also not identified any facts establishing that attendance at the P.J. Clarke's gathering – nonetheless inviting Kim to her apartment to smoke marijuana – were required by the nature of Merrill's business. Rather, Plaintiff cites *Ferris v. Delta Airlines*, 277 F.3d 128 (2d Cir. 1993), a case bearing no resemblance to the instant facts, in which a flight attendant on a layover in a foreign country was assaulted by her co-worker at a hotel paid for by her employer. *Ferris*, 277 F.3d at 134-35. The court stated that these circumstances were "very different from those that arise when stationary employees go home at the close of their normal workday."[4] *Id.* at 135. In stark contrast to *Ferris*, Plaintiff's alleged assault occurred at her home, hours after the conclusion of her workday, and after Plaintiff socialized with Kim at two bars and another co-worker's apartment. (*Id.* at 343, 470, 478-79, 517). Even in *Devlin* where the alleged assault occurred *at the bar* where the co-workers were gathered, the incident was not deemed part of the workplace. *See Devlin*, 2003 U.S. Dist. LEXIS 5226, at *2.

**B. Plaintiff Has Not Demonstrated the Existence of a Hostile Work Environment in Merrill's Workplace**

Nowhere in her opposition papers does Plaintiff address the admissions that she made, under oath, that she does not believe that her supervisors or anyone else at Merrill ever discriminated against her. (*Id.* at 383, 433, 447-48). Indeed, when asked if anyone at Merrill discriminated against her because of her gender, Plaintiff responded, "I'd like to believe that that's not the case." (*Id.* at 447-48).

**Kim's Alleged Conduct before October 21, 2008**

Plaintiff has cited no evidence supporting her claim that Kim, her co-worker, engaged in conduct prior to October 21, 2008 amounting to a hostile work environment. Contrary to her sworn

---

[4] Additionally, in *Ferris*, liability was imputed based on the employer's knowledge that the assailant had previously assaulted three other employees. *Id.* at 136. Yet, no one at Merrill, including Plaintiff, had ever complained to Merrill managers or Human Resources about misconduct by Kim prior to the alleged incident on October 21, 2008. (Krause Dep. at 222-23, 285, 290, 329, 374, 464; Putetti Aff. at ¶ 3.)

3

testimony, Plaintiff now alleges that Kim "made two inappropriate sexual gestures" toward her "at work." (Pl. Br. at 5). As Plaintiff admitted under oath, and as detailed in Defendants' opening brief, at most Kim attempted to kiss Plaintiff on two occasions in purely social settings *outside of the workplace* (*see* discussion p. 14-15). However, even if such conduct actually occurred and offended Plaintiff, unwanted kisses, even *in the workplace*, are not sufficient to create a hostile work environment. (*See id.* at 15).

Plaintiff's only other basis for her claim that Kim created a hostile work environment is that he made "inappropriate comments about her work attire." (Pl. Stmt. 56.1 at ¶ 73). Plaintiff testified that Kim made "fun of her" clothes and made the following three comments: (1) "something about my skirt being short, short the markets, skirt being long, like a Mormon, long the markets;" (2) "are you wearing tennis underwear, or something to the effect of tennis underwear;" and (3) "short sleeves, red hair is hooking to me." (Krause Dep. at 221-22, Affirmation of Kevin B. Leblang dated February 17, 2011 ("Leblang Aff. II")). Kim's supposed comments cannot support a hostile work environment claim because they were not pervasive. Plaintiff only identified three alleged statements that Kim made over the course of her two years at Merrill – and she provides nothing further in opposition to this motion. *See, e.g., Lane v. Collins & Aikman Floorcoverings, Inc.*, No. 00 Civ. 3241, 2001 U.S. Dist. LEXIS 17757, at *21-22 (S.D.N.Y. Oct. 30, 2001) (granting summary judgment where six incidents of alleged discriminatory comments made over a two-year period were too "infrequent" and "isolated"); *Lamar v. Nynex Serv. Co.*, 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (no hostile work environment based on five allegedly sexual incidents over approximately seventeen months). Nor were these comments sufficiently severe to constitute a hostile work environment. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (plaintiff voted "sleekest ass" and supervisor's touching of her breasts with papers not "severe" conduct); *Lamar*, 891 F. Supp. at 185 (touching of plaintiff's hand and statement that plaintiff looked "hot" were "too mild and innocuous to constitute sexual harassment as a matter of law").

4

**Purported Inappropriate Language by Merrill Employees**

In opposition, Plaintiff alleges, for the first time, citing no support, that there were improper comments "directed by male supervisors toward her and other female employees." (Pl. Br. 8-9). She also summarily asserts that "sexually inappropriate language" was used in the workplace. (*Id.* at 7-8). As an initial matter, Plaintiff may not defeat summary judgment by merely relying on unsubstantiated allegations of improper language. *See Cooper v. Allied Barton Sec. Srvs.*, No. 80 Civ. 10669, 2010 U.S. Dist. LEXIS 68416, at *18-19 (S.D.N.Y. July 8, 2010). *See also Nieves v. Angelo, Gordon & Co.*, 341 Fed. Appx. 676, 678 (2d Cir. 2009) (a plaintiff in a discrimination case cannot defeat summary judgment "based on purely conclusory allegations of discrimination, absent any concrete particulars.").

Defendants are at a loss to determine who or what Plaintiff is referencing with respect to her claim that supervisors made "inappropriate comments," as she points to no facts bolstering this claim and has previously not made any such allegations regarding either of her supervisors. In fact, Plaintiff testified that she does not contend that either of her supervisors discriminated against her based on her gender. (Krause Dep. at 383, 433, 447-48). With respect to the alleged use of "sexually inappropriate language," because Plaintiff cites to no facts in support of her allegations, Defendants can only assume that she is referring to the two purported instances of cursing addressed in Defendants' opening brief (*see* discussion p. 15-16). Neither of these alleged incidents involved conduct sufficiently severe or pervasive to allow her claims to survive summary judgment for the reasons set forth therein.

Likewise, Plaintiff's claim that the alleged "curse jar" was "intended to address sexually inappropriate language" and that Kim supposedly "harassed, accused and confronted" Plaintiff and "other female subordinates about complaints of inappropriate language leading up to its use" is nonsensical and has no support in the record. (Pl. Br. at 7-8; Pl. Stmt. 56.1 at ¶ 66). *See Tutko v. James River Paper Co.*, No. 98-9663, 1999 U.S. App. LEXIS 28455, at *4-5 (2d Cir. Oct. 29, 1999) ("Summary judgment against a plaintiff in an employment discrimination case is appropriate if the plaintiff offers only

5

unsupported assertions, conjecture or surmise, or conclusory statements to support an essential element of [the] case."). Plaintiff testified that after Kim heard "that someone complained about the use of the language on the desk," that he "eventually accused me, or, like, pressed me to see if I ratted him out, or them out." (Krause Dep. at 203). Plaintiff further testified that Kim then asked her if another woman on the desk complained and Plaintiff responded that she did not think so. (*Id.*). Assuming for purposes of this motion only that Plaintiff's recitation of facts is true, her account of her discussion with Kim does not prove that "sexually inappropriate language" was in fact used in the work environment, nor does it substantiate her allegation that the "curse jar" was in any way related to gender.

**Alleged Conduct by Canteen Workers**

In support of her claim that the canteen workers "made offensive statements to Plaintiff, in a loud voice, in the presence of male supervisors, in a sexually suggestive manner" (Pl. Stmt. 56.1 at ¶ 74), Plaintiff merely cites to her testimony describing an isolated incident where one of the workers said, "ooh can't concentrate with you in that skirt" and moved his body left to right while "ooh-ing and ahh-ing." (Krause Dep. at 261). As discussed in Defendants' opening brief, such an incident, even if true, is not sufficiently severe or pervasive to create a hostile work environment (*see* discussion p. 17-18).[5]

Plaintiff's contention that she complained about the canteen workers to Christian Howes ("Howes"), an employee on the Japan desk, and that Howes "abdicat[ed] . . . his responsibility" to report her complaint (Pl. Br. at 8) cannot be reconciled with Plaintiff's testimony. She testified that at a bar one evening, she told Howes that the canteen workers made "rude remarks." (Krause Dep. at 279-80, Leblang Aff. II). Plaintiff did not ask him to take any action in response to this issue, but he suggested that Plaintiff confront the canteen workers about their conduct. (*Id.* at 280, Leblang Aff. II). A few weeks

---

[5] Plaintiff also contends that other women "were exposed to the daily, inappropriate, and sexual comments of the male Canteen staff" (Pl. Br. at 8), but this claim has no factual basis. As set forth in the report drafted by the independent law firm that investigated her claims, no other women, including those identified by Plaintiff, reported any sexual remarks by the canteen workers. (*See* Leblang Aff. Ex. J).

6

later, Howes followed up with Plaintiff who indicated that, "It's fine now." (*Id.* at 423-25, Leblang Aff. II). Plaintiff never complained to Human Resources or her supervisors, and even if her statement to Howes was sufficient to constitute a complaint, she informed him that the conduct had ceased. Accordingly, Plaintiff's alleged complaint cannot create liability for Merrill. *See Sutton v. N.Y. Transit Auth*, No. 02-CV-1441, 2009 U.S. Dist. LEXIS 118309, at *15-16 (E.D.N.Y. Sept. 30, 2009) (conduct ceased as soon as plaintiff complained and thus employer not liable); *Big Apple Tire, Inc. v. Telesector Res. Grp., Inc.*, 476 F. Supp. 2d 314, 327-28 (S.D.N.Y. 2007) (no sex harassment as a matter of law where alleged comments stopped after being reported).

**Alleged Harassment by Samuel Kim**

Plaintiff's argument that "direct evidence" proves that Samuel Kim knew of the alleged assault and harassed her by sending a facially neutral e-mail "at the behest of Ken Kim" (Pl. Br. at 9) is blatantly contradicted by the record, as detailed in Defendants' opening brief (*see* discussion p. 19). Indeed, the *only* direct evidence on this issue is Samuel Kim's own testimony in which he clearly stated that (1) he did not know who Plaintiff was, but contacted her because he assumed that Kim needed her assistance urgently; (2) Kim did not ask him to e-mail Krause; and (3) he never learned that Plaintiff accused Kim of sexually assaulting her. (Kim Dep. at 40, 46-48, Leblang Aff. II).

**C.  Plaintiff Has Not Established That She Complained of Alleged Sexual Harassment and That There Was No Reasonable Avenue of Complaint**

As set forth fully in Defendants' opening brief (*see* discussion p. 19), Plaintiff never complained to her supervisors or to Human Resources about alleged sexual harassment during the entire two years that she worked at the Firm – a fact which she does not dispute in her opposition papers. She also does not present any evidence demonstrating that Merrill failed to exercise reasonable care and take appropriate corrective action as soon as it learned of her allegations against the Firm. (*See id.* at 19-20).

Plaintiff does not deny that she was aware of Defendants' anti-discrimination and anti-harassment policies and complaint procedure. (Krause Dep. at 285-90; Leblang Aff. Exs. F, G, H). Yet,

7

in a feeble attempt to circumvent this weakness in her claim, Plaintiff asserts that there was no reasonable avenue of complaint at Merrill because Richard Davidson ("Davidson"), a co-worker on a different desk with whom she had a sexual relationship, told her not to complain to Human Resources. (Pl. Stmt. 56.1 at ¶ 67; Krause Dep. at 137-39, Leblang Aff. II). Plaintiff testified that during a discussion about potential layoffs, Davidson gave her "advice," "in a mentoring . . . tone," that she would be "the first to go" if she got on "HR's radar." (Krause Dep. at 161, 386-87, 391, Leblang Aff. II). However, her argument that Davidson deterred her from complaining to Human Resources does not pass muster. First, she concedes that Davidson was not on her desk and had no supervisory authority over her. (*Id.* at 391, Leblang Aff. II). Second, the discussion pertained to potential layoffs and was not in the context of Plaintiff's complaints about alleged harassment. Third, although Plaintiff testified that this conversation occurred between August 2006 and the summer of 2007, she admits that in October of 2007 she contacted Human Resources about a different matter. (*Id.* at 390-93, Leblang Aff. II). Thus, Plaintiff's claim that there was no reasonable avenue of complaint must be rejected.

## II. PLAINTIFF HAS NOT SHOWN THAT SHE WAS MISCLASSIFIED UNDER THE FLSA AND THE NEW YORK LABOR LAW

An employee is properly classified under the administrative exemption where the salary-basis and duties tests are met, as detailed in Defendants' opening brief (*see* discussion p. 22-23). Plaintiff does not dispute that the salary-basis test was satisfied. Because Plaintiff has not pointed to a material factual dispute with respect to the duties that she performed, the issue of whether she was properly classified under the FLSA is purely a question of law, not of fact. Applying the law to the facts at hand, it is indisputable that Plaintiff's role meets the duties test and thus, summary judgment must be granted.

Plaintiff fails to offer any evidence contradicting Defendants' recitation of the job duties that she performed. As Plaintiff conceded in her opposition papers and in her sworn testimony, her duties were substantially expanded soon into her employment beyond those typically performed by a Senior Specialist. (*See* Pl. Br. at 10, 13; Krause Dep. at 393). In an effort to retract from her testimony that she

functioned at a higher level than other Senior Specialists, Plaintiff cherry picks a quotation from Samuels' testimony to make it appear as if her primary task was ordering lunch. (*See* Pl. Br. at 11). In fact, in the testimony that she cites, Samuels is describing the duties performed by a typical desk assistant and not the primary duties performed by Plaintiff. (Samuels Dep. at 29-30). Like Plaintiff, Samuels testified that she assumed additional responsibilities beyond those usually performed by a Senior Specialist. (*Id.* at 38).

Despite her futile attempt to minimize her position, Plaintiff does not contest Defendants' evidence that the following duties comprised the bulk of her role: responding to client research requests, creating investment summaries, coordinating and participating in events, meetings, conferences and road shows, and cross-selling to other desks. (Krause Dep. at 291, 295, 301, 308, 371, 441, 443-45; Lamprecht Dep. at 40-41, 44). As explained in Defendants' opening brief, because such tasks directly relate to "assisting with the running or the servicing of [Merrill's] business" and to the "general business operations of [Merrill's] customers" and entail the marketing and promotion of its financial products and services to clients, they fall squarely within the administrative exemption (*see* discussion p. 23).

Other than her unsupported claim that the role of "a support person" could not include the exercise of discretion and independent judgment (Pl. Br. at 12), Plaintiff does not contest the specific record evidence presented in Defendants' opening brief that her duties entailed the requisite discretion and independent judgment (*see* discussion p. 24-25). The decision in *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, holding that the duties of a senior level administrative assistant at a financial services firm included the exercise of discretion and independent judgment, is dispositive here and Plaintiff does not even attempt to distinguish *Seltzer* from the instant case. 356 F. Supp. 2d 288, 292, 301-02 (S.D.N.Y. 2005). Indeed, the plaintiff in *Seltzer* performed duties very similar to the more fundamental tasks performed by Plaintiff – arranging travel, scheduling appointments, and completing expense reports – and was found to exercise the requisite discretion and independent discretion to meet the administrative exemption. *See id.*

9

While Plaintiff does not dispute that she engaged in the aforementioned duties, she alleges, citing no support and in direct opposition to her own testimony, that she did not have any supervisory responsibility in her role as a Senior Specialist. (Pl. Br. at 13). In fact, Plaintiff unequivocally testified that she was responsible for training, overseeing, and assigning work to other assistants on the desk. (Krause Dep. at 440, 442). She further conceded that she provided input into hiring decisions for other support staff for the desk and interviewed such candidates. (*Id.* at 440). As evident from *Seltzer*, the fact that Plaintiff supervised other employees weighs heavily in favor of the conclusion that she was properly classified as administratively exempt. (*See id.* at 441-43, Lamprecht Dep. at 40-41, 44).

Finally, the fact that Plaintiff had no set hours and decided when to leave for the day, based on whether she believed her work was completed, also supports the argument that Plaintiff exercised discretion and independent judgment. (Samuels Dep. at 55-58, Leblang Aff. II). *See Schwind v. EW & Assoc.*, 357 F. Supp. 2d 691, 704 (S.D.N.Y. 2005) (the plaintiff was found to exercise discretion and independent judgment where he "was not required to keep time sheets" and "planned his own schedule").

## Conclusion

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety and grant such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         February 17, 2011

                                        KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                        By:     /s/ Kevin B. Leblang
                                                   Kevin B. Leblang
                                                   Eliza A. Kaiser
                                                   Katrina L. Baker

                                        1177 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 715-9100

                                        ***Attorneys for Defendants***

To:	John L. Ciarelli, Esq.
	Patricia A. Dempsey, Esq.
	CIARELLI & DEMPSEY
	737 Roanoke Avenue
	Riverhead, New York 11901

	Michael T. Cornacchia, Esq.
	260 Madison Avenue, 22nd Floor
	New York, New York 10016

	*Attorneys for Plaintiff*