**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
KAITLIN KRAUSE,                                        :
                                                       :
                          Plaintiff,                   :
                                                       :        10 Civ. 2603 (RMB)
-against-                                              :
                                                       :        <u>**DECISION & ORDER**</u>
MERRILL LYNCH, PIERCE, FENNER, &                       :
SMITH, INC., MERRILL LYNCH & CO., and                  :
BANK OF AMERICA CORPORATION,                           :
                                                       :
                          Defendants.                  :
------------------------------------------------------------x

## I.    Background

On January 27, 2010, Kaitlin Krause ("Krause" or "Plaintiff") commenced this action

against Merrill Lynch, Pierce, Fenner, & Smith, Inc., Merrill Lynch & Co., and Bank of America

Corporation (collectively, "Merrill" or "Defendants"), pursuant to Title VII of the Civil Rights

Act, 42 U.S.C. § 2000(e), <u>et seq.</u>, Article 15 of the New York State Executive Law, Section 13 of

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 213, and New York Labor Law, 12

N.Y.C.R.R. § 138-2 <u>et seq.</u>  Plaintiff alleges that Merrill (1) "subject[ed] her to a sexually hostile

work environment," including an alleged sexual assault by a co-worker; (2) improperly classified

her as an exempt employee; and (3) intentionally and negligently caused her emotional distress.

(Compl., dated Jan. 27, 2010, ¶¶ 1, 44, 54–55.)

On December 21, 2010, Merrill filed a motion for summary judgment, arguing, among

other things, that (1) Plaintiff's hostile work environment claim fails as a matter of law because

liability cannot be imputed to Merrill for "a purported off-duty, after-hours sexual assault by

[Plaintiff's] co-worker," and the other "alleged sporadic conduct by her co-workers, the bulk of

which is gender-neutral," is not actionable under Title VII; (2) Plaintiff was properly classified

as administratively exempt because "she performed work critical to [Merrill's] financial services business and to the business of its clients"; and (3) Plaintiff cannot show "that Merrill intended to cause [emotional distress], or that it was reckless with respect to the causation of such conduct." (Mem. of Law in Supp. of Defs.' Mot. for Summ. J., dated Dec. 12, 2010 ("Defs. Mem."), at 1–2.)

On January 28, 2011, Plaintiff filed an opposition, arguing, among other things, that (1) Plaintiff was assaulted by a director at Merrill who "relied on his authority to accomplish the assault," and Plaintiff was subjected to separate incidents of "vulgar and sexually suggestive and inappropriate comments . . . by male supervisors"; and (2) Plaintiff's "position, title and duties did not carry with them [any] discretion and independent judgment."  (Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., dated Jan. 28, 2011 ("Pl. Mem."), at 5, 7–9.)  Plaintiff fails to respond to Merrill's argument regarding alleged infliction of emotional distress.

On February 17, 2011, Merrill filed a reply.  (See Reply Mem. of Law in Further Supp. of Defs.' Mot. for Summ. J., dated Feb. 17, 2011.)  The parties waived oral argument.

The following facts are not in dispute:

In January 2007, Plaintiff was hired as a Senior Specialist to the Emerging Europe Middle East and Africa Desk ("EEMEA Desk") in Merrill's Global Equity Markets Department and paid an annual salary of $55,000.  (See Defs.' Statement Pursuant to Local Rule 56.1, dated Dec. 21, 2010 ("Defs. 56.1"), ¶¶ 1, 4; Plaintiff's Rule 56.1(b) Counterstatement of the Disputed Material Facts in Opp'n to Defs.' Mot. for Summ. J., dated Jan. 28, 2011 ("Pl. 56.1"), ¶¶ 1, 4.)

After the close of business on October 21, 2008, Plaintiff and several of her co-workers voluntarily gathered at a bar near Merrill's New York Office.  (Defs. 56.1 ¶ 27; Pl. 56.1 ¶ 27.) The event "was not an official function of [Merrill]" and Merrill "did not pay for the drinks at the

bar." (Defs. 56.1 ¶ 27; Pl. 56.1 ¶ 27.) Plaintiff left the bar at approximately 8:00 p.m. with three of her co-workers, including Kenneth Kim ("Kim"), a Director of another desk at Merrill, whom Plaintiff described as "her friend[]." (Defs. 56.1 ¶¶ 31–32, Pl. 56.1 ¶¶ 31–32.) After stopping at another friend's apartment and another pub, Plaintiff and Kim returned together to Plaintiff's apartment at approximately 10:00 p.m. (Defs. 56.1 ¶¶ 33–37; Pl. 56.1 ¶¶ 33–37.) Plaintiff alleges that Kim raped her there. (Defs. 56.1 ¶ 38; Pl. 56.1 ¶ 38.) On or about October 23, 2008, Plaintiff pressed criminal charges against Kim. (Compl. ¶ 34; Defs. 56.1 ¶ 39; Pl. 56.1 ¶ 39.) Merrill placed Kim on leave pending disposition of the charges. (Defs. 56.1 ¶ 40; Pl. 56.1 ¶ 40.) On or about November 5, 2009, Kim pled guilty to Coercion in the Second Degree in violation of N.Y. Penal Law § 135.60(1), a Class E misdemeanor. (Defs. 56.1 ¶ 47; Pl. 56.1 ¶ 47.) Merrill terminated Kim from his position shortly thereafter. (Defs. 56.1 ¶ 47; Pl. 56.1 ¶ 47.)

Merrill also provided Plaintiff with a paid leave of absence until February 2009 when she "decided not to return to Merrill." (Defs. 56.1 ¶¶ 41–42; Pl. 56.1 ¶¶ 41–42.) In or about mid-February 2009, Plaintiff raised with Merrill, for the first time, allegations – separate from the alleged rape – that she had been subjected to a hostile work environment while at Merrill. (Defs. 56.1 ¶ 43; Pl. 56.1 ¶ 43.) Upon learning of the allegations, "Merrill engaged an independent law firm, Orrick Herrington & Sutcliff LLP ("Orrick"), to conduct an investigation into Plaintiff's claims, which Orrick memorialized in a report." (Defs. 56.1 ¶ 44; Pl. 56.1 ¶ 44.) The report concluded, among other things, that Plaintiff's hostile work environment claims could not be substantiated and that Merrill employees viewed the environment at Merrill as "collegial, professional and respectful." (Defs. 56.1 ¶¶ 45–46; Pl. 56.1 ¶¶ 45–46; Mem. to Michael Putetti, Esq. from Aimee B. Flortin, Esq., dated June 5, 2009, at 6.) On December 23, 2009, the United States Equal Employment Opportunity Commission issued Plaintiff a "Notice of Right to Sue"

letter.  (Compl. ¶ 6; see also Notice of Right to Sue (Issued on Request) by the U.S. Equal

Employment Opportunity Commission, dated Dec. 23, 2009.)

>**For the reasons stated below, Merrill's motion for summary judgment is granted.**

## III.    Legal Standard

Summary judgment should be granted where "there is no genuine issue as to any material

fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The

court construes all evidence in the light most favorable to the non-moving party, drawing all

inferences and resolving all ambiguities in h[er] favor."  Amore v. Novarro, 624 F.3d 522, 529

(2d Cir. 2010); see Salerno v. City Univ. of N.Y., No. 99 Civ. 11151, 2003 WL 22170609, at *10

(S.D.N.Y. Sept. 18, 2003).  The non-movant must "set forth specific facts showing that there is a

genuine issue for trial," Fed. R. Civ. P. 56(e), and must "produce evidence that would permit a

rational juror to render a verdict in h[er] favor," Goenaga v. March of Dimes Birth Defects Fund,

51 F.3d 14, 18 (2d Cir. 1995).  See Brant v. Cnty. of Dutchess, No. 05 Civ. 10590, 2008 WL

418379, at *3 (S.D.N.Y. Feb. 11, 2008).

"In a discrimination case such as this one, the defendant 'will be entitled to summary

judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of

prohibited discrimination.'"  Chenette v. Kenneth Cole Prds., Inc., No. 05 Civ. 4849, 2008 WL

3176088, at *3 (S.D.N.Y. Aug. 6, 2008) (citing Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir.

2006)).

"As a general proposition, employers are not responsible under Title VII for hostile

sexual acts resulting from nonwork-related, off-duty interactions between co-employees."

Feliciano v. Alpha Sector, Inc., No. 00 Civ. 9309, 2002 WL 149139, at *8 (S.D.N.Y. July 12,

2002) (citing P. v. Delta Air Lines, Inc., 102 F. Supp. 138 (E.D.N.Y. 2000)).  "When a co-

employee – as distinct from a supervisor – is alleged to have engaged in harassing activity, the employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 767 (2d Cir. 1998); see also Heskin v. Insite Advertising, Inc., No. 03 Civ. 2598, 2005 WL 407646, at *20 (S.D.N.Y. Feb. 22, 2005).

## IV.    Analysis

### (1)  Hostile Work Environment

Merrill argues, among other things, that Kim was Plaintiff's co-worker, that the alleged incident occurred off-site at Plaintiff's apartment, that Merrill was "not on notice of any prior alleged improper conduct by Kim," and that Merrill "promptly removed Kim from the workplace" upon learning of the charges. (Defs. Mem. at 10–12.) Defendants also argue that "Plaintiff's remaining hostile work environment allegations" fail because "the alleged conduct by her co-workers w[ere] episodic and almost entirely gender-neutral." (Defs. Mem. at 13.)

Plaintiff counters, among other things, that "[l]iability can be imputed to" Merrill because "the nature of [Merrill's] business requires off-duty interactions," and Kim "used his authority to compel or coerce [Plaintiff] to interact outside the office." (Pl. Mem. at 9.) Plaintiff also argues that her remaining hostile work environment allegations are "supported by the evidence and testimony produced in discovery." (Pl. Mem. at 8–9.)

In order to survive summary judgment on a hostile work environment claim, "a plaintiff must either demonstrate a single extraordinarily severe incident or a series of incidents that were sufficiently 'continuous and concerted to have altered the conditions of her working environment.'" Feliciano, 2002 WL 149139, at *7; Salerno, 2003 WL 22170609, at *10. The "plaintiff must then show that a specific basis exists for imputing the conduct that created the

hostile environment to the employer." <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 153–54 (2d Cir. 2000).[1]

Plaintiff fails to show a supportable basis for imputing liability to Merrill for Kim's actions. <u>See</u> <u>Devlin v. Teachers' Ins. & Annuity Ass'n of Am.</u>, No. 02 Civ. 3228, 2003 WL 1738969, at *2 (S.D.N.Y. Apr. 2, 2003). First, Kim was not Plaintiff's supervisor and nowhere does Plaintiff allege that Kim had the power to hire or fire her, or alter her hours, benefits, or any other condition of employment. <u>See</u> <u>Feliciano</u>, 2002 WL 1492139, at *10; <u>see also</u> <u>Mack v. Otis Elevator Co.</u>, 326 F.3d 116, 123 (2d Cir. 2003) ("[I]t is only when a supervisor with immediate (or successively higher) authority over the employee has engaged in the complaint of conduct, that the 'employer [may be] subject to vicarious liability.'"); (Defs. 56.1 ¶ 32; Pl. 56.1 ¶ 32.)

Second, Merrill cannot be held liable, in these circumstances, for what transpired at the off-site premises social event and, thereafter, at Plaintiff's apartment. <u>See</u> <u>Devlin</u>, 2003 WL 1738969, at *2; <u>see also</u> <u>Feliciano</u>, 2002 WL 1492139, at *8 ("employers are not responsible under Title VII for hostile sexual acts resulting from nonwork-related, off-duty interactions between co-employees"); (Compl. ¶ 32; Defs. 56.1 ¶¶ 37–38; Pl. ¶¶ 37–38.) And, there is "no evidence from which a reasonable fact-finder could infer anything remotely approaching compulsion" by Merrill to force Plaintiff to attend the after-hours social event or to return with Kim to Plaintiff's apartment. <u>See</u> <u>Devlin</u>, 2003 WL 1738969, at *2; (Defs. 56.1 ¶¶ 27, 29–30; Pl. 56.1 ¶¶ 27, 29–30; Dep. Tr. of Kaitlin Krause, dated Sept. 15, 2010 ("Krause Dep. Tr."), at 336:18-20 (Q: Did you voluntarily go down [to the bar] to have drinks?" A: "Yes.").)

---

[1]    Because "New York courts require the same standard of proof for [sex discrimination] claims brought under the [Human Rights Law] as those brought under Title VII," <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708, 715 (2d Cir. 1996), the "outcome under state law will be the same as the outcome under Title VII," <u>E.E.O.C. v. Lafond</u>, No. 07 Civ. 988, 2009 WL 803150, at *6 n. 4 (E.D.N.Y. Mar. 25, 2009).

Third, there is no evidence to suggest that Merrill failed to provide a "reasonable avenue for complaint" or "knew of the harassment but did nothing about it."  Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001).  Rather, the record reflects that Plaintiff was aware of Merrill's complaint procedure and Merrill's anti-discrimination and anti-harassment policies; that prior to the alleged assault, no complaints were filed with Merrill against Kim; and that upon receiving notice of the incident, Merrill placed Kim on leave until he was ultimately terminated. (See Defs. 56.1 ¶¶ 24–25, 40, 47; Pl. 56. 1 ¶¶ 24–25, 40, 47); Chenette, 2008 WL 3176088, at *10 (finding that defendant was "entitled to judgment in its favor based on its prompt and effective remedial actions" in response to plaintiff's complaints of harassment); Brown v. Orange & Rockland Util., Inc., 594 F. Supp. 2d 382, 394 (S.D.N.Y. 2009).  Because "[n]o reasonable juror could find that [Merrill] was negligent in allowing or responding to [Kim's] behavior, . . . [Merrill] cannot be held liable."  Devlin, 2003 WL 1738969, at *3; see Van Zant, 80 F.3d at 715.

Likewise, Plaintiff's allegation that she was subjected to a hostile work environment because Kim had twice tried to kiss Plaintiff, once in April 2007 at her apartment and once in May 2008 at a co-worker's birthday party, fails because the record reflects that these incidents also occurred off-site and without any Merrill involvement.  (See Defs. 56.1 ¶¶ 47, 52; Pl. 56.1 ¶¶ 47, 52); see also Feliciano, 2002 WL 1492139, at *8 ("[W]hile [Plaintiff] may not have appreciated [her co-worker's] interest in her, his activities, as alleged by [Plaintiff] do not constitute actionable offenses under Title VII.") (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998)).

Plaintiff's remaining hostile work environment allegations similarly fail.  See Cosgrove v. Sears Roebuck & Co., 9 F.3d 1033, 1041 (2d Cir. 1993).  That is, Plaintiff's allegations that on

one occasion she heard someone use the word "cunt," that on another occasion a canteen worker said that he couldn't "concentrate with [Plaintiff] in that skirt," and that on March 26, 2007, Plaintiff's co-worker asked her whether "everything [she was wearing was] black," are isolated incidents not "sufficiently continuous and concerted . . . to be deemed pervasive" under Title VII.  See Alfano v. Costello, 294 F.3d 365, 375 (2d Cir. 2002); Cosgrove, 9 F.3d at 1041–42 (offensive remarks by two male co-workers and an offensive anonymous note were not sufficiently severe and pervasive to constitute unlawful harassment); Nieves v. Dist. Council 37 AFSCME, No. 04 Civ. 8181, 2009 U.S. Dist. LEXIS 1112653, at *17–19 (S.D.N.Y. Nov. 24, 2009) (comments that plaintiff was "sexy" and other sexual jokes, "[w]hile undoubtedly inappropriate and in poor taste, . . . [are] not, taken as a whole, sufficient to sustain a reasonable finding of a hostile work environment," where the "conduct was relatively infrequent"); (Compl. ¶ 27; Defs. 56.1 ¶¶ 55, 59–61; Pl. 56.1 ¶¶ 55, 59–61, 74.)  And while Plaintiff alleges that workers at the canteen called her "honey," baby," and "sexy," and that "[t]hese remarks were made daily [and] openly," (Compl. ¶ 27), she fails to adduce or provide more specifics in support of these conclusory allegations.  See Desimone v. JP Morgan Chase Bank, No. 02 Civ. 7039, 2004 WL 2978011, at *4 (S.D.N.Y. Dec. 22, 2004) ("'purely conclusory allegations of discrimination, absent any concrete particulars are insufficient to defeat a summary judgment motion.") (citing Cameron v. Cmty. Aid for Retarded Children, Inc., 335 F. 3d 60, 63 (2d Cir. 2003)).  Moreover, such remarks are not sufficiently severe as to alter the conditions of her employment, particularly in light of the fact that the canteen workers were not Plaintiff's supervisors.  See O'Dell v. Trans World Entm't. Corp., 153 F. Supp. 2d 378, 387 (S.D.N.Y. 2001) (citation omitted); Leson v. Ari of Conn., Inc., 51 F. Supp. 2d 135, 141 (D. Conn. 1999) (plaintiff's allegations that an outside-contractor called her "love," "sweetie," or "honey" did not

give rise to a hostile work environment claim); <u>Salvatore v. KLM Royal Dutch Airlines</u>, No. 98

Civ. 2450, 1999 WL 796172, at *11 (S.D.N.Y. Sept. 30, 1999); <u>see also</u> <u>Quinn</u>, 159 F.3d at 768.

Plaintiff's allegations that male employees at Merrill uttered profanities and that Plaintiff's co-

worker cursed at her once after she made a mistake were gender neutral and not actionable under

Title VII.  (<u>See</u> Defs. 56.1 ¶¶ 54, 62; Pl. 56.1 ¶¶ 54, 62, 70–71, 80–81, 84, 89, 93, 100); <u>Oncale</u>,

523 U.S. at 80 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it

is directed only at discrimination . . . because of . . . sex."); <u>Brown v. Henderson</u>, 257 F.3d 246,

252 (2d Cir. 2001); <u>Desimone</u>, 2004 WL 2978011, at *6.[2]

**(2) Employment Classification**

Defendants argue, among other things, that Plaintiff was properly classified as exempt

(from overtime) under Section 13(a) of the FLSA because, among other reasons, Plaintiff

performed "office work directly related to assisting with the running or the servicing of

[Merrill's] business," and Plaintiff's "primary duties undoubtedly included the exercise of

discretion and independent judgment."  (Def. Mem. at 23.)  Plaintiff counters, among other

things, that Plaintiff "was not a . . . sales professional[] with clients" and that "[P]laintiff's

position, title and duties did not carry with them [any] discretion and independent judgment."

(Pl. Mem. at 12–13.)

---

[2]        And even assuming, <u>arguendo</u>, that these alleged incidents were severe and pervasive
enough to constitute a hostile work environment (which they were not), Plaintiff has failed to
show that liability should be imputed to Merrill.  <u>See</u> <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143,
154 (2d Cir. 1997).  Among other reasons, Plaintiff never complained about these incidents to
Merrill during the two years she worked there, and upon learning of the allegations, Merrill
engaged a law firm to conduct an investigation.  (<u>See</u> Defs. 56.1 ¶¶ 43–45; Pl. 56.1 ¶¶ 43–45);
<u>Perry</u>, 115 F.3d at 154 ("the company took immediate responsive action on that very day, [and]
investigat[ed] [plaintiff's] complaint"); <u>Davis v. N.Y.C. Transit Auth.</u>, No. 05 Civ. 6995, 2008
U.S. Dist. LEXIS 96991, at 16–18 (S.D.N.Y. Nov. 14, 2008).

"The FLSA exempts from its overtime compensation provisions 'any employee employed in a bona fide executive, administrative, or professional capacity.'" Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 472 (S.D.N.Y. 2008) (citing 29 U.S.C. § 213(a)(1)).[3] An employee in a bona fide administrative capacity is someone whose "primary duty is business operations of the employer or the employer's customer," and whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." Id. (citing 29 C.F.R. § 541.200(a) (2010)).[4]

The record reflects that Plaintiff "perform[ed] work directly related to assisting with the running or servicing of [Merrill's] business." Amendola, 558 F. Supp. 2d at 473 (citing 29 C.F.R. § 541.201(a)); Scwind, 357 F. Supp. 2d at 703. Plaintiff's responsibilities included responding directly to client research requests, creating investment summaries, and coordinating and participating in, among other things, client events, meetings, and conferences. (Defs. 56.1 ¶¶ 10–29; Pl. 56.1 ¶¶ 10–29); see also Davis, 587 F.3d at 535 ("Employees in the financial services industry generally meet the duties requirement for the administrative exemption if their duties include work such as . . . marketing, servicing or promoting the employer's financial products.") (citing 29 C.F.R. § 541.203(b)); Scwind, 357 F. Supp. 2d at 703 (plaintiff was properly classified as administratively exempt where her work "consisted of being on-site with clients . . . handling client relations and client services"). Plaintiff also served as "captain" for

---

[3]     "New York Labor Law is nearly identical to FLSA with respect to these overtime requirements and exemptions" and are analyzed in the same manner. Adams v. Niagara Mohawk Power Corp., No. 02-CV-1353, 2008 WL 4527694 (N.D.N.Y. Sept. 30, 2008).

[4]     To qualify for this administrative exemption, Plaintiff must also be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week." See 29 C.F.R. § 541.200(a). The parties do not dispute that Plaintiff's annual salary of $55,000 exceeds $455 per week. (Defs. 56.1 ¶ 4; Pl. 56.1 ¶ 4); see also Seltzer v. Dresdner Kleinwort Wasserstein, Inc., 356 F. Supp. 2d 288, 301 (S.D.N.Y. 2005); Scwind v. EW & Assocs., 357 F. Supp. 2d 691, 703 (S.D.N.Y. 2005).

the EMMEA Desk's "road shows," and, in that capacity, was responsible for structuring the content of road shows and organizing and deciding the logistics for the shows, including booking travel, selecting cities, and communicating with attendees concerning the schedules.[5]  Plaintiff, as the EEMEA Desk's representative at road shows, hosted clients and resolved problems that they may have had.  (Defs. 56.1 ¶ 17; Pl. 56.1 ¶ 17; Krause Dep. Tr. at 442:24-25; 443:1-3 (Q: "[Y]ou mentioned you were doing more producing type stuff.  What did you mean by that?"  A: "Captaining the road show"); O'Neill-Marino v. Omni Hotels Mgmt. Corp., No. 99 Civ. 3793, 2001 WL 210360, at *8 (where plaintiff "was responsible for negotiating services with clients . . ., assisting clients during their meetings, and coordinating various . . . departments in order to properly service the client"); Seltzer, 356 F. Supp. 2d at 292 (finding that plaintiff engaged in an administrative capacity where her job duties included "arranging travel, scheduling appointments, . . . and completing expense reports").

        And, Plaintiff exercised discretion and independent judgment because she was "given reasonable latitude in carrying on negotiation[s] on behalf of [Merrill]" by, among other things, organizing and scheduling sales events and road shows for Merrill clients and engaging in cost-cutting initiatives such as analyzing different vendors and developing protocols for her desk to cut expenses.  (See Defs. 56.1 ¶¶ 17–18; Pl. 56.1 ¶¶ 17–18; Krause Tr. at 443:3; Lamprecht Dep. Tr., at 40:9-19; see also O'Neill-Marino, 2001 WL 210360, at *9 (where plaintiff "negotiated contracts and price terms with clients" and "coordinated various aspects of events, such as banquet set-up and transportation, and generally solved any problems that the client encountered"); Morales v. Zondo, Inc., No. 00 Civ. 3494, 2001 WL 64745, at *4 (S.D.N.Y. Jan.

---

[5]     Road shows were intended to give Merrill analysts an opportunity to, among other things, meet with their clients and present to them "their latest investment thesis or report."   (Dep. Tr. of Robert Lamprecht, dated Aug. 31, 2010 ("Lamprecht Dep. Tr."), at 38:22-25; 39:2-17.)

25, 2001).  Against this backdrop, Plaintiff's conclusory assertion that she "d[id] not have any. . . discretion relating to her respective job duties and responsibilities" fails to raise a question of fact on her FLSA claim.  (Compl. ¶¶ 17–18); see O'Neill-Marino, 2001 WL 210360, at *9.

### (3) Intentional Infliction of Emotional Distress

Defendants argue, among other things, that Plaintiff "falls far short of demonstrating . . . 'extreme and outrageous conduct'" and cannot show that Merrill "intentionally or recklessly caused such conduct."  (Def Mem. 22.)  Plaintiff fails to respond to this argument.

Plaintiff's claim is abandoned.  "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."  Monachino v. Bair, No. 09 Civ. 3939, 2011 WL 349392, at *4 (S.D.N.Y. Feb. 1, 2011) (quoting Maher v. Alliance Mortg. Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009)); see also Price v. Mount Sinai Hosp., No. 07 Civ. 11318, 2010 WL 4910218, at *9 (S.D.N.Y. Nov. 23, 2010) (citing N.Y. Workers' Comp. Law ¶ 29(6)); Pasqualini v. MortgageIT, Inc., 498 F. Supp. 2d 659, 666–67 (S.D.N.Y. 2007).

Even assuming, arguendo, that Plaintiff did not abandon her claim, Plaintiff cites to no facts on the record to demonstrate that Merrill acted with intent to cause or reckless disregard of a substantial probability of causing severe emotional distress.  See Price, 2010 WL 4910218, at *9 (citing Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001)).  Merrill's alleged actions, "even when read in a light most favorable to Plaintiff, do not go beyond all possible bounds of decency."  Williams v. City of Mount Vernon, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006); Morton v. The Salvation Army, No. 05 Civ. 2620, 2005 WL 2234005, at *4 (S.D.N.Y. Sept. 12, 2005).

## V.     Conclusion and Order

For the reasons stated herein, Merrill's motion for summary judgment [#18] is granted.

The Clerk of the Court is respectfully requested to close this case.

Dated: April 13, 2011
       New York, New York

RMB

**RICHARD M. BERMAN, U.S.D.J.**

13